**William Neal MOORE, Respondent, Cross-Petitioner,**

v.

**Charles BALKCOM, Warden, Arthur K. Bolton, Attorney General, Petitioners, Cross-Respondents.**

No. 81–7418.

United States Court of Appeals, Eleventh Circuit.

Sept. 30, 1983.

Charles E. Brown, George M. Weaver, Atlanta, Ga., for petitioners, cross-respondents.

Professor Daniel J. Givelber, Northeastern University School of Law, Professor Donald Berman, Boston, Mass., for respondent, cross-petitioner.

Before HILL and HENDERSON, Circuit Judges, and GARZA *, Senior Circuit Judge.

JAMES C. HILL, Circuit Judge:

The petition for rehearing is granted. The prior panel opinion, issued June 23, 1983, is withdrawn and the following opinion is substituted in its place.

Petitioner, William Neal Moore, was convicted of malice murder and armed robbery in the Superior Court of Jefferson County, Georgia and sentenced to death. Both parties to this habeas corpus action raise numerous issues in this appeal and cross-appeal. We conclude that the district court correctly denied petitioner relief on his claims that he was unconstitutionally convicted on the basis of an unknowing plea to malice murder, that he was denied effective assistance of counsel, and that the failure to transcribe closing arguments deprived him of a constitutionally adequate review of his death sentence. In our prior opinion, we concluded that the trial court had committed constitutional error in imposing the death sentence on the basis of nonstatutory aggravating circumstances. In *Zant v. Stephens,* —— U.S. ——, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), the Supreme Court addressed the issue of whether a death penalty imposed under the Georgia death penalty scheme based on three statutory aggravating circumstances, one of which was subsequently held to be invalid by the Georgia Supreme Court, can be constitutionally upheld. The Court held that the narrowing function of statutory aggravating factors is achieved when the sentence is supported by at least one statutory aggravating circumstance. This decision controls, and is contrary to, our previous conclusion that the sentence must be vacated. Accordingly, we reverse the judgment of the district court on this issue.

### I. Procedural History

A state grand jury indicted petitioner for the April 2, 1974 malice murder and armed robbery of Fredger Stapleton. At a hearing conducted by Judge Walter C. McMillan, Jr. on June 4, 1974, petitioner waived his right to a jury trial with respect to both guilt and sentence and entered a plea of guilty to all charges. At the sentencing hearing, Judge McMillan sentenced the petitioner to death.

The Georgia Supreme Court conducted its mandatory review of the death sentence in accordance with the Georgia statutory procedure. Ga.Code Ann. § 17–10–35 (1982) (formerly Ga.Code Ann. § 27–2537). The court affirmed petitioner's conviction and sentence in a *per curiam* opinion, with one judge dissenting, and denied Moore's petition for rehearing. *Moore v. State,* 233 Ga. 861, 213 S.E.2d 829 (1975). The United States Supreme Court denied Moore's petition for certiorari. *Moore v. Georgia,* 428 U.S. 910, 96 S.Ct. 3222, 49 L.Ed.2d 1218 (1976).

Moore then filed a declaratory judgment action in state court seeking a new sentenc-

---

* Honorable Reynaldo G. Garza, U.S. Circuit Judge for the Fifth Circuit, sitting by designa-

tion.

ing proceeding. The court denied relief and the Georgia Supreme Court affirmed. *Moore v. State,* 239 Ga. 67, 235 S.E.2d 519 (1977). The United States Supreme Court denied certiorari. *Moore v. Georgia,* 434 U.S. 878, 98 S.Ct. 232, 54 L.Ed.2d 159 (1977). Moore then brought a habeas corpus action in state court. The court denied all relief and the Georgia Supreme Court denied Moore's application for a certificate of probable cause to appeal.

Petitioner filed the present habeas corpus action on November 23, 1978 in the federal district court for the Southern District of Georgia. On April 29, 1981, the district court granted the writ with regard to petitioner's death sentence but denied relief on his other claims. This appeal and cross-appeal followed.

## II. *Facts*

At the time of Fredger Stapleton's death, Moore was an enlisted man in the United States Army. In connection with his military service, Moore met George Curtis, a nephew of Fredger Stapleton. Curtis told Moore that Mr. Stapleton kept a large sum of money at his home. At first, Moore and Curtis planned to rob the victim together and to set fire to the house with Stapleton inside. After entering Stapleton's house, Curtis and Moore found a locked door. Curtis became frightened and the two returned to Curtis' house. Subsequently Moore returned to Stapleton's house alone.

However, he armed himself with a .38 caliber pistol in case he met opposition in his robbery attempt. Moore claims that he did not intend to kill Stapleton.

Moore claims that Stapleton confronted him with a shotgun. Stapleton fired a shotgun blast at Moore which missed. Stapleton then hit Moore in the leg with the gun barrel. Petitioner then fired four or five shots at Stapleton, who was hit and killed by two bullets which struck him in the chest.

After the shooting, Moore removed two billfolds from the victim's pockets and took the shotgun. The money taken from Stapleton totaled approximately $5700. Moore was subsequently arrested and cooperated with the police during the investigation.

## III.

### A. *Imposition of Sentence*

The district court, holding that the Georgia Supreme Court did not properly discharge its statutory duty of appellate review, concluded that the imposition of the death penalty in this case "shocks the conscience" and granted relief with regard to sentence. Under the Georgia system, the sentencing authority, either a judge or a jury, may impose the death sentence when it finds the existence of a statutory aggravating circumstance.[1]  Ga.Code Ann. § 17–

---

1. Statutory aggravating circumstances include:

(1) The offense of murder, rape, armed robbery, or kidnapping was committed by a person with a prior record of conviction for a capital felony, or the offense of murder was committed by a person who has a substantial history of serious assaultive criminal convictions.

(2) The offense of murder, rape, armed robbery, or kidnapping was committed while the offender was engaged in the commission of another capital felony, or aggravated battery, or the offense of murder was committed while the offender was engaged in the commission of burglary or arson in the first degree.

(3) The offender by his act of murder, armed robbery, or kidnapping knowingly created a great risk of death to more than one person in a public place by means of a weapon or device which would normally be hazardous to the lives of more than one person.

(4) The offender committed the offense of murder for himself or another, for the purpose of receiving money or any other thing of monetary value.

(5) The murder of a judicial officer, former judicial officer, district attorney or solicitor or former district attorney or solicitor during or because of the exercise of his official duty.

(6) The offender caused or directed another to commit murder or committed murder as an agent or employee of another person.

(7) The offense of murder, rape, armed robbery, or kidnapping was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim.

(8) The offense of murder was committed against any peace officer, corrections employee or fireman while engaged in the performance of his official duties.

(9) The offense of murder was committed by a person in, or who has escaped from, the lawful custody of a peace officer or place of lawful confinement.

10–31 (1982) (formerly Ga.Code Ann. § 26–3102). If the sentencing authority elects to impose the death penalty, it must specify the aggravating circumstance which it found beyond a reasonable doubt. Ga.Code Ann. § 17–10–30(c) (1982) (formerly Ga. Code Ann. § 27–2534.1(c). Whenever the death penalty is imposed, the Georgia Supreme Court must conduct an expedited review of the case. Ga.Code Ann. § 17–10–35 (1982) (formerly Ga.Code Ann. § 27–2537). In reviewing the sentence, the court must determine whether the sentence was imposed "under the influence of passion, prejudice, or any other arbitrary factor," whether the evidence supports the finding of a statutory aggravating circumstance, and "whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Ga.Code Ann. § 17–10–35(c) (1982) (formerly Ga. Code Ann. § 27–2537(c)).

■ In the case at bar, Judge McMillan sentenced Moore to death after finding that petitioner had committed a capital offense, malice murder, while in the commission of another capital crime, armed robbery. This finding was itself sufficient to support a death sentence under Georgia law and was supported by the record. See Ga.Code Ann. § 17–10–30(b)(2) (1982) (formerly Ga.Code Ann. § 27–2534.1(b)(2)). After reading his order and announcing the sentence which he imposed,[2] Judge McMillan continued:

> [F]or the purposes of this Court, for this finding, I could not in good conscience apply in your case sufficient to wipe out the aggravating statutory circumstances. If we're going to philosophy about it, and if I'm permitted to do that, I'll do it. People in their homes—the most precious place a man can have—is his home; and to be in a home, and probably this man was asleep, I don't know, or for any person to be, not this man, but any person, to be asleep in his home, to be invaded by an intruder, that's armed with weapons, that's prepared necessarily to kill (or otherwise the weapons wouldn't be there in the hands of the intruder), is probably an invasion of the highest injustice that another can do. Now, I can only imagine that anyone that is invaded by an intruder with an armed weapon, the fear that they must go through when they are encountered in such a situation. So I feel like that if the Court ever does require mandatory punishment—that is when they specify by law what offenses will have to be suffered by the electric chair—that one of these statutory offenses probably will be that when a person is robbed and killed in his home, that mandatory, as contrasted to discretionary, statutory aggravated circumstances will probably warrant the electric chair without life imprisonment. That justifies me in making the finding that I made.

In granting relief from the sentence, the district court found that the sentence was based primarily on the location of the killing, Stapleton's home, and not on the presence of the aggravating circumstance articulated in the trial judge's order. The district court concluded that the Georgia Supreme Court violated its statutory duty to review "similar cases" by focusing on cases involving different circumstances. In the district court's view, "similar cases" would be those involving killing in the home. The district court engaged in its own proportionality review on this basis and concluded that the death penalty in the case at bar "shocked the conscience."

## B. *District Court's Analysis*

■ Judge Edenfield held that the death penalty was unconstitutionally imposed in this case after concluding that the Georgia Supreme Court erred in performing

---

(10) The murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or custody in a place of lawful confinement, of himself or another. Ga.Code Ann. § 17–10–30(b) (1982) (formerly Ga.Code Ann. § 27–2534.1(b).

**2.** Judge McMillan made his comments after he had read his order which cites only one statutory aggravating circumstance as the basis for the sentence. He had not concluded the sentencing proceeding and his remarks should therefore be viewed as part of the proceedings.

its proportionality review. In upholding the constitutionality of the Georgia sentencing procedure, the United States Supreme Court noted the Georgia Supreme Court's mandatory review of all death sentences.[3] *Gregg v. Georgia,* 428 U.S. 153, 198, 203–06, 96 S.Ct. 2909, 2939–41, 49 L.Ed.2d 859 (1976) (Stewart, J., joined by Powell and Stevens, JJ.); *id.* at 211, 223–24, 96 S.Ct. at 2942–43, 2948–49 (White, J., joined by Burger, C.J., and Rehnquist, J., concurring); *see also Zant v. Stephens,* —— U.S. ——, 103 S.Ct. 2733, 2741–42, 2744, 2749–50, 77 L.Ed.2d 235 (1983). In reviewing the Georgia court's proportionality review, we examine only whether the Georgia Supreme Court has "properly perform[ed] the task assigned to it under the Georgia statutes." *Gregg v. Georgia,* 428 U.S. at 224, 96 S.Ct. at 2948 (White, J., joined by Burger, C.J., and Rehnquist, J., concurring); *see Zant v. Stephens,* 103 S.Ct. at 2744.

As a federal court reviewing a collateral attack on a state prosecution, we must give great deference to the Georgia Supreme Court's method of conducting its proportionality review. *See Barefoot v. Estelle,* —— U.S. ——, 103 S.Ct. 3383, 3391, 77 L.Ed.2d 1090 (1983). "The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials." *Id.* It is the decision of the state government as a matter of state statutory law, subject to federal constitutional constraints, to decide whether or not to provide a capital punishment mechanism and to provide for appropriate procedural safeguards. *See California v. Ramos,* —— U.S. ——, 103 S.Ct. 3446, 3451–53, 77 L.Ed.2d 1171 (1983); *Zant v. Stephens,* 103 S.Ct. at 2743–44; *Eddings v. Oklahoma,* 455 U.S. 104, 127–28, 102 S.Ct. 869, 882–83, 71 L.Ed.2d 1 (1982) (Burger, C.J., joined by White, Blackmun, and Rehnquist, JJ., dissenting); *Godfrey v. Georgia,* 446 U.S. 420,

428, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980) (Stewart, J., joined by Blackmun, Powell and Stevens, JJ.) ("if a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty"); *Wainwright v. Spenkelink,* 442 U.S. 901, 903, 99 S.Ct. 2421, 2422, 60 L.Ed.2d 1075 (1979) (Rehnquist, J., dissenting) ("a State whose citizens have expressed through their elected representatives and their judges and juries a will to impose the death penalty for offenses such as murder may do so if the State conforms its trial and sentencing procedures to the requirements enunciated in this Court's cases"); *Roberts v. Louisiana,* 428 U.S. 325, 337, 96 S.Ct. 3001, 3008, 49 L.Ed.2d 974 (1976) (White, J., joined by Burger, C.J., Blackmun and Rehnquist, JJ., dissenting). Federal habeas courts must and should examine whether the application of approved sentencing procedures in a particular case creates a substantial risk that the punishment has been inflicted in an arbitrary and capricious manner. *E.g., Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980); *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Spinkellink v. Wainwright,* 578 F.2d 582, 604 (5th Cir.1978), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1976).

This court concluded in *Spinkellink v. Wainwright* that a federal habeas court generally cannot reexamine the proportionality review performed by a state appellate court in a capital case. 578 F.2d at 604. Spinkellink had contended that his crime, when compared to other Florida death penalty cases, was insufficiently gruesome or heinous to warrant the death penalty, *id.* at 602, and had highlighted seven other cases in which the Florida Supreme Court had

---

**3.** We do not decide whether the Supreme Court has mandated that capital punishment may only be imposed where a state has provided for some type of proportionality review. *See Harris v. Pulley,* 692 F.2d 1189, 1196–97 (9th Cir.

1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1425, 75 L.Ed.2d 787 (1983); *Williams v. Maggio,* 679 F.2d 381, 395 (5th Cir.1982) (en banc).

reversed death sentences. All of these other cases allegedly involved defendants equally or more deserving of the death penalty than he. *Id.* at 602 n. 25. This court condemned a federal case by case analysis of the cases used by the state appellate court in its proportionality review as an unnecessary intrusion on the Florida judicial system. *Id.* at 604.

> The process would be never-ending and the bench-mark for comparison would be chronically undefined. Further, there is no reason to believe that the federal judiciary can render better justice.... If the federal courts retried again and again the aggravating and mitigating circumstances in each of these cases, we may at times reach results different from those reached in the Florida state courts, but our conclusion would be no more, nor no less, accurate. Such is the human condition.

*Id.* at 605. The court qualified this doctrine of non-interference by noting that federal court intervention might be warranted if "a petitioner who has been sentenced to death can show that the facts and circumstance of his case are so clearly undeserving of capital punishment that to impose it would be patently unjust and would shock the conscience." *Id.* at 606 n. 28.

Petitioner argues that the review conducted by the Georgia Supreme Court in this case reached a result so extreme as to "shock the conscience." *Blake v. Zant,* 513 F.Supp. 772 at 812. Looking at Judge McMillan's comment, the district court concluded that he had based his sentencing decision on the fact that Moore had killed the victim in the victim's own home. The Georgia Supreme Court did not base its comparison of "similar cases" on cases involving victims who were attacked in their homes; it focused its review on cases involving the same statutory aggravating circumstance found in Judge McMillan's order. In the district court's view, the Georgia Supreme Court's analysis was improper since it chose the wrong cases to compare.[4] The district court concluded that the Georgia court's inadequate comparison justified the district court in engaging in its own proportionality analysis.

■ We hold that the district court erred in conducting its own proportionality review. A federal habeas court should not undertake a review of the state supreme court's proportionality review and, in effect, "get out the record" to see if the state court's findings of fact, their conclusion based on a review of similar cases, was supported by the "evidence" in the similar cases. To do so would thrust the federal judiciary into the substantive policy making area of the state. It is the state's responsibility to determine the procedure to be used, if any, in sentencing a criminal to death. *See California v. Ramos,* 103 S.Ct. at 3451–53.

■ The Georgia Supreme Court's proportionality review in this case provided an adequate safeguard against the freakish imposition of capital punishment.[5] *See*

---

4. In a sense, Moore's argument provides a significant basis for distinguishing *Spinkellink.* Spinkellink urged the court to compare the facts involved in other cases with those involved in his crime. Such a comparison, Spinkellink contended, would lead the federal court to conclude that application of the death penalty in his case was arbitrary, irrational, and capricious. Moore, on the other hand, does not challenge the result that the Georgia Supreme Court reached in its proportionality review. Moore seeks to establish that the Georgia Supreme Court "failed properly to perform its task in this case" of reviewing "similar cases." *See Gregg v. Georgia,* 428 U.S. at 224, 96 S.Ct. at 2948–49 (White, J., joined by Burger, C.J., and Rehnquist, J., concurring).

5. Different state supreme courts which have engaged in this type of proportionality review have suggested different methods of defining "similar cases." In *State v. Copeland,* S.C., 300 S.E.2d 63 (1982), the South Carolina Supreme Court defined the "universe" of similar cases as inclusive of all state cases in which the sentencing authority constitutionally imposed a death sentence based on similar findings of statutory aggravating circumstances. In *Williams v. Maggio,* 679 F.2d 381 (5th Cir.1982) (*en banc*), the court of appeals held that the Louisiana Supreme Court's review, a comparison of murder prosecutions in the particular judicial district from which the defendant appealed, provided adequate safeguards against freakish imposition of capital punishment. In *State v. Williams,* 308 N.C. 47, 301 S.E.2d 335,

*Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). While we may have reached a different conclusion regarding the proportionality of the sentence had we conducted a case-by-case comparison, we cannot conclude that the Georgia Supreme Court's review or the result it reached shocked the conscience.[6]

### C. *Judge McMillan's Imposition of the Death Sentence*

In our original panel opinion, we concluded that the sentencing judge committed constitutional error by considering a non-statutory aggravating factor in imposing the death penalty. *Moore v. Balkcom,* 709 F.2d 1353, 1361–67 (11th Cir.1983). In doing so, we had not had the opportunity to review the Supreme Court's holding in *Zant v. Stephens,* —— U.S. ——, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).[7] In that case, the Court squarely held that a death sentence imposed under the Georgia capital punishment scheme is not invalid when imposed partly on the basis of nonstatutory aggravating factors, provided that at least one valid statutory aggravating factor supports the sentence and that the invalid factor itself is not "constitutionally impermissible or totally irrelevant to the sentencing process." *Id.* at 2747. Judge McMillan based his sentencing decision partly on the valid statutory aggravating factor of murder committed in the course of another capital felony. *See* Ga.Code Ann. § 17–10–30(b)(2) (1982) (formerly Ga.Code Ann. § 27–2534.-1(b)(2)). We therefore focus on the nature of the nonstatutory aggravating factor considered by Judge McMillan in imposing the death sentence.

The thrust of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1971), and its progeny has been that unbridled discretion in death penalty procedures leading to imposition of the sentence in a discriminatory, arbitrary, or capricious manner is unconstitutional. *See Zant v. Stephens,* 103 S.Ct. at 2746–47; *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1204–05, 51 L.Ed.2d 393 (1977) (Stevens, J., joined by Stewart and Powell, JJ.); *Gregg v. Georgia,* 428 U.S. 153, 188–89, 96 S.Ct. 2909, 2932–33, 49 L.Ed.2d 859 (1976) (Stewart, J., joined by Powell and Stevens, JJ.) ("*Furman* mandates that where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action); *id.* at 199, 96 S.Ct. at 2937 (existence of discretionary stage does not invalidate Georgia procedure); *id.* at 220–23, 96 S.Ct. at 2947–48 (White, J., joined by Burger, C.J., and Rehnquist, J., concurring); *Proffitt v. Florida,* 428 U.S. 242, 252–54, 96 S.Ct. 2960, 2966–67, 49 L.Ed.2d 913 (1976) (Stewart, J., joined by Powell and Stevens, JJ.); *id.* at 258, 96 S.Ct. at 2969 ("the requirements of *Furman* are satisfied when the sentencing authority's discretion is guided and channeled by requiring examination of specific factors that argue in favor of or against imposition of the death penalty, thus eliminating total arbitrariness and capriciousness

355–57 (1983), the North Carolina Supreme Court held that similar cases for purposes of a proportionality review included "*all cases* arising since the effective date of our capital punishment statute, 1 June 1977, which have been tried as capital cases and reviewed on direct appeal by this Court and in which the jury recommended death or life imprisonment or in which the trial court imposed life imprisonment after the jury's failure to agree upon a sentencing recommendation within a reasonable period of time."

**6.** Even if we concluded that the Georgia Supreme Court's determination shocked the conscience, we would be required to remand the case to allow the state court to resentence the petitioner. A federal habeas court may not conduct a *de novo* proportionality review and thereby inject itself into the state sentencing procedure. Our review remains confined to whether the state sentencing procedure both on its face and as applied violates the eighth and fourteenth amendments. *See Spinkellink v. Wainwright,* 578 F.2d at 606 n. 28.

**7.** The Supreme Court rendered its decision in *Stephens* on June 22, 1983. We issued our original opinion in this case on June 23, 1983.

in its imposition"); *Jurek v. Texas,* 428 U.S. 262, 270–74, 96 S.Ct. 2950, 2955–57, 49 L.Ed.2d 929 (1976) (Stewart, J., joined by Powell and Stevens, JJ.) ("the Texas capital-sentencing procedure guides and focuses the jury's objective consideration of the particularized circumstance of the individual offense and the individual offender before it can impose a sentence of death").

■ These and subsequent cases have emphasized that discretion need not be eliminated from capital punishment mechanisms; rather, the Supreme Court has focused on channeling discretion to minimize the risk of arbitrary decision making. *E.g., Eddings v. Oklahoma,* 455 U.S. 104, 110–15, 102 S.Ct. 869, 874–76, 71 L.Ed.2d 1 (1982); *Godfrey v. Georgia,* 446 U.S. 420, 427–28, 100 S.Ct. 1759, 1764–65, 64 L.Ed.2d 398 (1980) (Stewart, J., joined by Blackmun, Powell, and Stevens, JJ.); *Lockett v. Ohio,* 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978) (plurality opinion); *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1204–05, 51 L.Ed.2d 393 (1977) (Stevens, J., joined by Stewart and Powell, JJ.), *Gregg v. Georgia,* 428 U.S. at 188–89, 96 S.Ct. at 2932–33 (Stewart, J., joined by Powell and Stevens, JJ.); *Proffitt v. Florida,* 428 U.S. at 258, 96 S.Ct. at 2969 (Stewart, J., joined by Powell and Stevens, JJ.); *Woodson v. North Carolina,* 428 U.S. 280, 302, 96 S.Ct. 2978, 2990, 49 L.Ed.2d 944 (1976) (Stewart, J., joined by Powell and Stevens, JJ.); *Furman v. Georgia,* 408 U.S. at 248–49 & n. 11, 92 S.Ct. at 2731–32 & n. 11 (Douglas, J., concurring); *id.* at 309–10, 92 S.Ct. at 2762–63 (Stewart, J., concurring); *id.* at 313, 92 S.Ct. at 2764 (White, J.,

concurring). *Furman* requires only that sentencing discretion "be 'directed and limited,' so that the death penalty [is] imposed in a more consistent and rational manner and so that there [is] a 'meaningful basis for distinguishing the . . . cases in which it is imposed from . . . the many cases in which it is not.' " *Lockett v. Ohio,* 438 U.S. at 601, 98 S.Ct. at 2963 (quoting *Gregg v. Georgia,* 428 U.S. at 188–89, 96 S.Ct. at 2932). In *Lockett,* the Court broadened the sentencing authority's discretion to allow consideration of all mitigating circumstances in making the individualized sentencing decision mandated by *Woodson* and *Roberts.*[8]

The Supreme Court's treatment of discretion in capital sentencing reflects an inherent tension between the requirement of individualized sentencing and objective standards. By approving the Georgia capital punishment procedure under which no person might be sentenced to death unless found guilty of a statutorily defined capital offense under circumstances specified by the legislature as aggravating the crime, the Court undertook to eliminate discretion (other than the inherent pardoning power of an American jury) in finding the defendant eligible for the death penalty. By denouncing mandatory death penalties in *Woodson* and requiring that the sentencing authority be free to consider *any* mitigating circumstances, statutory or not, in *Lockett,* the Court emphasized the importance of individualized consideration of each defendant and all circumstances in deciding whether or not to impose a sentence less than death. In *Zant v. Stephens,* —— U.S.

---

**8.** Justice White, recognizing the arbitrary nature of any exercise of discretion, feared that allowing the sentencing authority to consider all mitigating circumstances would result in arbitrary and capricious death sentences.

Moreover, I greatly fear that the effect of the Court's decision today will be to compel constitutionally a restoration of the state of affairs at the time *Furman* was decided, where the death penalty is imposed so erratically and the threat of execution is so attenuated for even the most atrocious murders that "its imposition would then be the pointless and needless *extinction of life with only* marginal contributions to any discernible so-

cial or public purposes." *Furman v. Georgia, supra* [408 U.S.], at 312 [92 S.Ct. at 2764] (White, J., concurring). By requiring as a matter of constitutional law that sentencing authorities be permitted to consider and in their discretion to act upon any and all mitigating circumstances the Court permits them to refuse to impose the death penalty no matter what the circumstances of the crime. This invites a return to the pre-*Furman* days when the death penalty was generally reserved for those very few for whom society has least consideration.

438 U.S. at 623, 98 S.Ct. at 2983.

——, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), the Supreme Court noted that "two themes guided the concern with eliminating arbitrariness in capital sentencing. First, the Court noted that no perfect procedure exists for deciding in which cases governmental authority should be used to impose death." *Id.* at 2747 (citing *Lockett v. Ohio,* 438 U.S. at 605, 98 S.Ct. at 2965 (plurality opinion)). Second, the Court recognized that "because there is a quantative difference between death and any other permissible form of punishment, 'there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.'" *Id.* (citing *Woodson v. North Carolina,* 428 U.S. at 305, 96 S.Ct. at 2991 (Stewart, J., joined by Powell and Stevens, JJ.)). In determining whether Judge McMillan constitutionally imposed Moore's death sentence, we do not substitute our judgment on the sentence. Rather, we examine whether Judge McMillan properly examined the factors surrounding the crime, carefully considering all mitigating circumstances, before exercising his discretion in a properly channeled fashion in making the awesome sentencing decision in accordance with a constitutional capital punishment mechanism.

▮ The Georgia death penalty system has channeled discretion to certain limited areas. *See generally Zant v. Stephens,* 250 Ga. 97, 297 S.E.2d 1 (1982). The defendant must have been accused and convicted of committing a crime for which the state allows imposition of the death penalty in accordance with the constitutional prohibition of cruel and unusual punishment. *See Coker v. Georgia,* 433 U.S. 584, 591–98, 97 S.Ct. 2861, 2865–69, 53 L.Ed.2d 982 (1977) (White, J., joined by Stewart, Blackmun, and Stevens, JJ.) (holding that though rape

deserves serious punishment, the death penalty, which is unique in its severity and irreversibility, is an excessive penalty for the rapist who does not take a human life). In order *absolutely* to structure discretion while not requiring mandatory death sentences, Georgia has strictly limited the application of the death sentence to cases where the sentencing authority finds the existence of certain enumerated statutorily authorized aggravating circumstances. The sentencing authority possesses no discretion in either redefining the crimes for which a defendant may be sentenced to death or adding to the list of aggravating circumstances which make a defendant eligible for such sentence. Once the sentencing authority has determined the existence of a statutory aggravating circumstance, the defendant becomes eligible for a capital sentence. When this stage has been reached, the sentencing authority possesses unbridled discretion to determine, based on relevant and accurate information, whether to impose a death sentence.[9] This discretion cannot be controlled if the decision-maker is to make an individualized decision at this eligibility level. *See Eddings v. Oklahoma,* 455 U.S. at 123–28, 102 S.Ct. at 880–83 (Burger, C.J., joined by White, Blackmun, and Rehnquist, JJ., dissenting). The sentencing authority possesses unbridled discretion to consider any perceived mitigating circumstances. *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). While discretion to impose the death penalty for any reason which might be capricious is denounced, *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1971), it now appears that discretion to grant mercy—perhaps capriciously—is not curtailed. The sentencing authority can assign what it deems the appropriate weight to particular mitigating

---

**9.** Unlike the Florida statutory system, the Georgia statutory mechanism does not explicitly require a weighing of aggravating circumstances against mitigating circumstances. *Goodwin v. Balkcom,* 684 F.2d 794, 801–02 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983). *Compare* Ga.Code Ann. § 17–10–31 (1982) (formerly Ga. Code Ann. § 26–3102) *with* Fla.Stat.Ann.

§§ 921.141(2)(b) and (c). Both systems, however, require a subjective balancing by not automatically imposing the death sentence in cases where aggravating circumstances are found. Both systems require the sentencing authority to list specifically the statutory aggravating circumstances found in a particular case. *Id.*

circumstances. Moreover, with unbridled consideration of mitigating circumstances the sentencing authority may consider something to be mitigating that others might consider aggravating. Some might say that a stable family background is mitigating; others might reasonably say that this is an aggravating factor. Different sentencing authorities could assign different weights to the same aggravating circumstances. The constitution does not assign specific weights to different aggravating or mitigating circumstances.

In *Zant v. Stephens,* —— U.S. ——, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), the Supreme Court held that a sentencing authority does not arbitrarily impose the death penalty when, the statutory requirements having been met, it then considers nonstatutory aggravating circumstances. *See also Barclay v. Florida,* —— U.S. ——, 103 S.Ct. 3418, 3422–28, 77 L.Ed.2d 1134 (1983) (Rehnquist, J., joined by Burger, C.J., and White and O'Connor, JJ.). The Court noted that once the sentencing authority has found the existence of a statutory aggravating factor thereby making the defendant eligible for the death penalty, the Georgia scheme does not enunciate specific standards to guide the sentencing authority's consideration of aggravating and mitigating circumstances. *Id.* at 2741–42. In making its decision, the sentencing authority may consider

> additional evidence in extenuation, mitigation, and aggravation of punishment, including the record of any prior criminal convictions and pleas of guilty or pleas of nolo contendere of the defendant, or the absence of any prior conviction and pleas
> . . . .

Ga.Code Ann. § 17–10–2 (1982) (Formerly Ga.Code Ann. § 27–2503). The sentencer may not rely on misinformation of constitutional magnitude such as prior uncounseled convictions that were unconstitutionally imposed. *Zant v. Stephens,* 103 S.Ct. at 2748 n. 23. Similarly, the sentencer cannot apply as aggravating circumstances "factors that

are constitutionally impermissible or totally irrelevant to the sentencing process, such as for example the race, religion, or political affiliation of the defendant" or "conduct that actually should militate in favor of a lesser penalty, such as perhaps the defendant's mental illness." *Id.* at 2747 (citations omitted). The sentencer also does not possess discretion to impose the death penalty based on nonstatutory aggravating circumstances which preclude the consideration of mitigating circumstances. *See Eddings v. Oklahoma,* 455 U.S. at 113–15, 102 S.Ct. at 875–76 ("[j]ust as the state may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law,* any relevant mitigating circumstances") (emphasis in original); *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Reliance on any of these factors would invalidate the death sentence.

■ Discretion exists in the Georgia Supreme Court's review of capital cases. The court exercises discretion in determining whether the death sentence was imposed under the influence of passion, prejudice, or other arbitrary factors and in selecting the "similar cases" for its proportionality review. *See* Ga.Code Ann. § 17–10–35 (1982) (formerly Ga.Code Ann. § 27–2537). Such discretion is necessary if the Georgia Supreme Court is to serve as a clearinghouse of all cases in which the death penalty has been imposed pursuant to the Georgia procedure and to ensure that the sentence has not been "freakishly" imposed. *See Godfrey v. Georgia,* 446 U.S. at 427, 100 S.Ct. at 1764 (Stewart, J., joined by Blackmun, Powell, Stevens, JJ.); *Gregg v. Georgia,* 428 U.S. at 188–89, 96 S.Ct. at 2932–33 (Stewart, J., joined by Powell & Stevens, JJ.).

In the case at bar, Judge McMillan, had the duty to examine the aggravating and mitigating circumstances. He considered both the commission of armed robbery and the location of the murder—the victim's home—in reaching his sentencing decision.[10]

---

**10.** He stated:

> [I]f the Court ever does require mandatory punishment—that is when they specify by

One might construe Judge McMillan's statement as both an explanation of why he viewed armed robbery in this case to be a sufficient reason to authorize and require him to impose the death penalty and a description of his thought process in evaluating the statutory aggravating factors.[11] Close examination of Judge McMillan's statement reveals, however, that he established a further and different nonstatutory aggravating circumstance of murder committed in the victim's home.

▮ Judge McMillan "justified" his sentence upon the weight he felt this circumstance deserved. This sentence was imposed in 1974, when many scholars anticipated that the channeling of discretion would lead to its elimination, so that certain crimes under certain circumstances would carry a mandatory death sentence. He predicted that this crime, " . . . when a person is robbed and killed in his own home . . . would be such a crime." Although his prediction at that time was consistent with that of other scholars, later cases teach us that it was faulty. *Woodson v. North Carolina,* 428 U.S. at 302, 96 S.Ct. at 2990 (Stewart, J., joined by Powell and Stevens, JJ.) (mandatory statutes enacted in response to *Furman* have simply papered over the problem of unguided and unchecked jury discretion");[12] *Roberts v. Louisiana,* 428 U.S. 325, 334, 96 S.Ct. 3001, 3006, 49 L.Ed.2d 974

(1976) (Stewart, J., joined by Powell and Stevens, JJ.). He expressed his consideration of a circumstance of the particular case before him which was not prescribed in the statute. It being clear that he did find a statutory aggravating circumstance, *Stephens* teaches that this additional consideration, channelled to the nature of the particular crime, was not improper.

Our interpretation of Judge McMillan's statement as involving a nonstatutory circumstance is consistent with this court's decision in *Goode v. Wainwright,* 704 F.2d 593 (11th Cir.1983). In *Goode,* the trial judge, after the Florida jury had recommended death, listed three aggravating circumstances and two mitigating circumstances and stated that the mitigating circumstances did not outweigh the aggravating circumstances. *Id.* at 604. He justified his sentencing of Goode to death by stating that "there are certain cases and certain times when we can no longer help, we can no longer rehabilitate, and there are certain people, and Arthur Goode is one of them, that's actions demand that society respond and all we can do is exterminate." *Id.* He concluded that a death sentence would "guarantee society, at least as far as it relates to this man, . . . that he will never again kill, maim, torture, or harm another human being." *Id.* The court of appeals

---

law what offense will have to be suffered by the electric chair—that one of these statutory offenses probably will be that when a person is robbed and killed in his home, that mandatory, as contrasted to discretionary, statutory aggravated circumstances will probably warrant the electric chair without life imprisonment. That justifies me in making the finding that I made.

**11.** Under the Georgia capital punishment system, the sentencing authority which imposes a death sentence must specify the aggravating circumstance(s) found. Ga.Code Ann. § 17–10–30(c) (1982) (formerly Ga.Code Ann. § 27–2534.1(c)). The trial court must also transmit a transcript and complete record of the trial as well as a separate report by the trial judge to the Georgia Supreme Court. Ga.Code Ann. § 17–10–35(a) (1982) (formerly Ga.Code Ann. § 27–2537(a)). This report is in the form of a 6½ page questionnaire designed to elicit information about the defendant, the crime, and the

circumstances of the trial. The report includes responses to detailed questions concerning the quality of the defendant's representation, whether race played a role in the trial, and whether in the trial judge's judgment, there was any doubt about the defendant's guilt or the appropriateness of the sentence. *Id.*

In his report, Judge McMillan listed the advance planning of Moore to commit the crime as a non-statutory circumstance which played a role in his decision. In imposing sentence in court, however, Judge McMillan clearly relied on the murder's location as another aggravating factor on the level of the statutorily enumerated factors in "justifying" his sentence.

**12.** Justice Stewart's opinion implies that mandatory death penalty statutes applied to an extremely narrow category of crimes defined in large part in terms of the offender's character or record may be constitutionally permissible. *Id.* 428 U.S. at 287 nn. 7 and 8, 292 n. 25, 96 S.Ct. at 2983 nn. 7 and 8, 2985 n. 25.

concluded that these statements indicated that the trial judge had improperly relied on a nonstatutory aggravating circumstance—impossibility of rehabilitation—and granted habeas relief. As the Court found in *Goode* upon examining the trial judge's statement, we conclude that Judge McMillan justified his sentence, statutory eligibility having been established, on a nonstatutory aggravating factor.[13]

Since consideration of a nonstatutory aggravating factor does not automatically invalidate a death sentence, *Barclay v. Florida,* —— U.S. ——, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983); *Zant v. Stephens,* —— U.S. ——, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), we must determine whether the factor applied in this case violated the constitution. Moore asserts that Judge McMillan viewed the location of the murder, the victim's home, as precluding, as a matter of law, consideration of any relevant mitigating circumstances. *See Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). In *Eddings* the trial judge stated: "Nor can the court in following the law, in my opinion, consider the fact of this young man's violent background." *Id.* at 109, 102 S.Ct. at 873. The Supreme Court emphasized that though the Oklahoma Court of Criminal Appeals agreed with the trial court that "only the fact of Edding's youth was properly considered as a mitigating circumstance." *Id.*

The case at bar presents a substantially different situation. Judge McMillan stated that in his view in 1974 murder and robbery in the home would, ultimately, require "mandatory . . . . statutory aggravated circumstances" if the Supreme Court ever required mandatory capital punishment. He also stated, however, that

> I also found, but I didn't need to find . . . . mitigating circumstances insofar as the aggravating circumstances were concerned. Mitigating means good circumstances, those being your willingness and your forthrightness in meeting what

must be to you a terrible, terrible experience. So that does go to your credit, but for the purposes of this Court, for this finding, I could not in good conscience apply in your case sufficient [mitigating circumstances] to wipe out the aggravating statutory circumstances.

In affirming the trial judge's decision, the Georgia Supreme Court noted that Judge McMillan had found as mitigating circumstances that Moore had done "the honorable thing in making true statements, cooperating with the officials and pleading guilty." *Moore v. State,* 233 Ga. at 865, 213 S.E.2d at 832. In conducting its proportionality review and affirming the sentence, the court also noted that Moore asserted that he had fully cooperated with the police, was 23 years old, was not an experienced criminal, and had started shooting from a combination of fright and intoxication. *Id.*

■ One could interpret Judge McMillan's language that capital punishment would likely become mandatory in cases involving murder and robbery in the victim's home as a nonstatutory aggravating factor which precluded consideration of mitigating factors. A fair examination of the entire sentencing proceeding, however, does not support this interpretation. The record indicates that Judge McMillan viewed the statutory aggravating circumstances and the location of the murder and robbery as so aggravating the crime as to outweigh all mitigating circumstances involved in the case. Such an evaluation comports with the constitutional requirement of an individualized sentencing decision. *See Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Ford v. Strickland,* 696 F.2d 804 (11th Cir.1983) (*en banc*). This interpretation rests, in part, on the analysis used by the Georgia Supreme Court in conducting its mandatory proportionality review. *See Zant v. Stephens,* 103 S.Ct. at 2749–50.

---

13. We need not comment on whether murder committed in the home would be a proper aggravating circumstance because Georgia has never included this factor as a statutory aggravating circumstance in Ga.Code Ann. § 17–10–30 (1982) (formerly Ga.Code Ann. § 27–2534.-1). *See also California v. Ramos,* 103 S.Ct. at 3452–53.

We conclude that though Judge McMillan applied a nonstatutory aggravating circumstance in imposing sentence, he did not refuse to consider mitigating circumstances. We therefore hold that the sentencing judge did not commit constitutional error in imposing petitioner's sentence.

### IV. *Validity of Petitioner's Plea*

In his cross-appeal, petitioner attacks the validity of his guilty plea, alleging that it was not intelligently and knowingly made. In *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), the Supreme Court held that a guilty plea is voluntarily made when the accused understands the nature of the constitutional protections he is waiving and he completely understands the charge. *Id.* at 645 n. 13, 96 S.Ct. at 2257 n. 13. "Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary [as an intelligent admission of guilt]." *Id.*

Moore argues that he did not understand the elements of malice murder and that the record before the sentencing judge demonstrates Moore's lack of understanding. Petitioner notes that the trial judge never explained the terms "malice aforethought," "intention," "provocation," or "abandoned and malignant heart." Moore asserts that he did not intend to kill Mr. Stapleton and specifically denied such intent on numerous occasions. Petitioner argues that we must determine his understanding by referring only to the record before the sentencing judge.

Petitioner admitted that he was in fact guilty of the offense charged in the indictment. At the entry of his guilty plea and during the sentencing proceeding, Moore acknowledged that he had authorized his counsel, Mr. Pierce, to enter a plea of guilty. Petitioner indicated that he understood the court's inquiries, that he had not entered his plea as a result of threats, coercion, or promises of benefit, and that he had conferred with his attorney concerning the charges against him and the questions posed to him by the court. The question before this panel is therefore whether Moore was given sufficient notice of the nature of the charges facing him in order to understand the crime.

As a preliminary matter, we hold that the district court properly used the testimony received from petitioner and Mr. Pierce at the state habeas proceeding in addressing this issue. "Evidence obtained at a post-conviction proceeding may serve to supplement the trial transcript and may be used in determining whether a plea was voluntarily made." *Pollinzi v. Estelle,* 628 F.2d 417, 418 (5th Cir.1980); *Fisher v. Wainwright,* 584 F.2d 691, 693 (5th Cir. 1978). At this proceeding, Mr. Pierce testified that he had explained the elements of the crime [14] to Moore and the requirement of a finding of aggravating circumstances in order to impose the death penalty. Petitioner has failed to overcome the presumption of correctness which attaches to the state habeas court's findings of fact. *See* 28 U.S.C. § 2254(d) (1976).

Petitioner relies heavily on the trial court's failure to address individually the particular elements of the crime charged when accepting the plea. State trial courts need not specifically address each individual element required under a state statute in order to accept a guilty plea. *See Burden v. State of Alabama,* 584 F.2d 100, 102 (5th Cir.1978) (record must contain some evidence that defendant was informed of elements of crime or some representation by counsel concerning the information which the defendant received). The judge need

---

**14.** Ga.Code Ann. § 16–5–1 (1982) (formerly Ga. Code Ann. § 26–1101) which defines the crime of malice murder provides:

(a) A person commits murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being.

(b) Express malice is that deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart.

only explain the statute sufficiently to give the defendant real and adequate notice of the nature of the charge against him or find proof that the defendant in fact understood the charge. *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). In the case at bar, both the petitioner's answers to questions posed in open court and testimony from his attorney support the conclusion that he in fact understood the nature of the charges against him.

## V. *Awareness of Right to Withdraw Guilty Plea*

■ Petitioner contends that he was not made aware of his right to withdraw his guilty plea at any time prior to the filing of his sentence. He contends that had he been aware of this right, he would have withdrawn his plea. Both the federal and state habeas courts found that Moore was aware of this right. Mr. Pierce specifically recalled advising petitioner of this right. Counsel also explained that petitioner had decided, upon his recommendation, not to withdraw the plea even if a death sentence were imposed. Petitioner relies solely on his own testimony that he was unaware of this right. We conclude that the district court properly relied upon the written factual determinations of the state habeas court after a full evidentiary hearing in concluding that Moore was aware of his right to withdraw his plea and made a reasoned decision not to do so. *Grantling v. Balkcom,* 632 F.2d 1261 (5th Cir.1980).

■ Counsel's and petitioner's decision to seek relief on appeal rather than withdrawing the plea represented a strategic decision. *See Washington v. Strickland,* 693 F.2d 1243, 1253–54 (5th Cir. Unit B 1982) (en banc), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983). Questions of trial strategy or tactics, particularly when consented to by the defendant, do not constitute a basis for federal habeas relief in the absence of exceptional circumstances. *See Coco v. United States,* 569 F.2d 367 (5th Cir.1978). Since petitioner has failed to show such exceptional circumstances, we hold that petitioner was provided with effective assistance of counsel.

## VI. *Absence of Transcript of Closing Argument*

■ Petitioner also argues that the trial court's failure to transcribe the closing arguments at his sentencing hearing prevented the reviewing courts from examining the imposition of his death sentence with "full disclosure of the basis for the death sentence." *Gardner v. Florida,* 430 U.S. 349, 361, 97 S.Ct. 1197, 1206, 51 L.Ed.2d 393 (1977) (Stevens, J., joined by Stewart and Powell, JJ.). The Court in *Gardner,* however, mandated only that "the record on appeal disclose to the reviewing court the considerations which motivated the death sentence in every case in which it is imposed." *Id.* In *Gardner,* the trial judge based his sentence in part on information contained in a partially disclosed presentence investigation report. In the case at bar, the record contains the transcript of Judge McMillan's imposition of sentence which does not refer to any undisclosed aspect of the proceeding on which he relied in imposing sentence. Moore has not shown that the state of the record was inadequate to permit the Georgia Supreme Court to perform its required review function. *See Stephens v. Zant,* 631 F.2d 397, 402–04 (5th Cir.1980), *modified on other grounds,* 648 F.2d 446 (5th Cir.1981), *rev'd on other grounds,* —— U.S. ——, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).

## VII. *District Court's Denial of Petitioner's Motion to Amend*

■ Moore contends that the district court erred in refusing to allow him to amend his habeas petition. Federal Rule of Civil Procedure 15(a) provides that a party may amend his pleading after a responsive pleading has been served only by leave of court. The rule also states that "leave shall be freely given when justice so requires." Certainly in a capital case, the district court should be particularly favorably disposed toward a petitioner's motion to amend. Nevertheless, the granting or denial of

leave to amend lies within the discretion of the trial court and is subject to reversal only for abuse of discretion. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Barrett v. Independent Order of Foresters,* 625 F.2d 73, 75 (5th Cir.1980); *In re Westec,* 434 F.2d 195, 203–04 (5th Cir.1970). In *Foman,* the Supreme Court held that the district court had abused its discretion when it denied leave to amend for no apparent or declared reason "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman,* 371 U.S. at 182, 83 S.Ct. at 230. In *Barrett,* the court of appeals held that the trial judge had not abused his discretion where the proposed amendment was not filed until nearly ten months after the original complaint and the appellant failed to show why the proposed additional matters could not have been raised initially. *Barrett,* 625 F.2d at 75.

▮ In the case at bar, the district court articulated sufficient reasons within its discretion justifying its decision denying leave to amend. Moore sought to assert that the Georgia capital sentencing procedure violated the eighth and fourteenth amendments despite the Supreme Court's prior holding that the Georgia death penalty statute is on its face constitutional. *See Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). The district court therefore refused to allow this proposed amendment on grounds of futility. *Blake v. Zant,* 513 F.Supp. 772, 805 (S.D.Ga.1981). Moore also claims that the district judge should have allowed him to amend his petition to allege that Judge McMillan unconstitutionally used a presentence report in imposing sentence before the petitioner or his counsel had an opportunity to examine it. The district court found that petitioner had been represented by counsel at all times. Counsel explicitly referred to this issue in the original habeas petition filed approximately two years before the proposed amendment. We cannot say that the district court abused its discretion in denying the proposed amendment in this case where counsel apparently considered and rejected the proposed arguments two years before filing the proposed amendment.[15]

### Conclusion

We GRANT the Petition for Rehearing. We affirm the district court's judgment that Moore's plea was voluntarily, intelligently, and knowingly made, that petitioner was aware of his right to withdraw his guilty plea, and that the absence of a transcript of closing arguments did not prevent adequate appellate review. We hold that the district court acted within its discretion in denying Moore's motion to amend his petition. We reverse the district court's judgment granting relief from petitioner's death sentence.

No member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 26), the Suggestion for Rehearing En Banc is DENIED.

AFFIRMED in part and REVERSED in part.

15. Mr. James C. Bonner who had represented petitioner at the prior state habeas petition, filed the initial habeas petition in federal court. At the time the proposed amendment was filed, Ms. H. Diana Hicks represented Moore. Since Moore was represented at all times by counsel, though not by the same individual, we cannot say that the district court abused its discretion in refusing to allow the amendment. Had the original petition been filed without counsel, we would be presented with a different situation on which we need not pass at this time.