Willie Clisby, Jr., was indicted and convicted in the Circuit Court of Jefferson County, Alabama, for the capital offense of nighttime burglary during the course of which the victim is intentionally killed. Section 13-11-2 (a)(4), Ala. Code 1975 (repealed 1981, Act No. 81-178, § 20, effective as to conduct occurring on or after July 1, 1981). On February 27, 1981, Clisby was sentenced to death.
The Court of Criminal Appeals affirmed the conviction and sentence. Clisby v. State, 456 So.2d 86 (Ala.Crim.App. 1982). After granting certiorari, this Court on February 11, 1983, remanded the case to the Court of Criminal Appeals with instructions to remand the case to the trial court for reconsideration of the report of Dr. Robert Estock, which was considered at the sentencing hearing before the trial court. Dr. Estock is a psychiatrist who had examined Clisby following his arrest to determine his competency to stand trial and once again after the grant of defendant's motion for a psychiatric examination made at his arraignment. Ex Parte Clisby,456 So.2d 95 (Ala. 1983). On March 29, 1983, the Court of Criminal Appeals, pursuant to this Court's order, remanded the case to the trial court for reconsideration of the psychiatrist's report, specifically in view of the holdings of Estelle v.Smith, 451 U.S. 454 (1981), and Proffitt v. Wainwright,685 F.2d 1227 (11th Cir. 1982).
While the case was on remand before the trial court, Clisby filed a new motion for psychiatric examination into the existence or non-existence of mitigating circumstances involving his mental and emotional state at the time of the crime. A hearing was held on this motion on April 26, 1983. At that hearing, the trial court heard testimony from Dr. John Callahan, the second psychiatrist to examine the petitioner, and testimony from petitioner himself. The hearing was continued until May 10, 1983, at which time further testimony was heard from Dr. Callahan. The trial court also heard arguments from both sides concerning the proper sentence for Clisby, who was sentenced to death in accordance with the trial court's written findings of fact.
On July 19, 1983, the Court of Criminal Appeals reviewed the sentence and the trial court's actions on remand. The Court again remanded the case to the trial court for clarification of its findings concerning mitigating circumstances. Clisby v.State, 456 So.2d 99 (Ala.Crim.App. 1983).
The trial court conducted another hearing on the second remand on July 29, 1983. At that hearing, neither side offered any additional testimony, but both sides argued the matter to the court. The trial court then took the matter under consideration and, on August 3, 1983, entered a written *Page 107 
sentence order containing findings of fact and again sentenced Clisby to death.
The Court of Criminal Appeals, upon review of the trial court's actions, affirmed the sentence on November 29, 1983. This opinion was modified on December 1, 1983, to add an express review of the death sentence in this case. Clisby v.State, 456 So.2d 102 (Ala.Crim.App. 1983) (as modified December 1, 1983).
Clisby thereupon petitioned this Court for writ of certiorari for review of his sentence. The writ was granted pursuant to Rule 39 (c), A.R.A.P.
This case has been tried once and reviewed twice by the trial court and three times by the Court of Criminal Appeals. This is the second time the case has been before this Court for review. This appeal concerns the treatment of the mitigating circumstances, the weight given those mitigating circumstances in the sentencing process, and whether the jury is required to specify the aggravating and mitigating factors it found and considered in reaching its verdict. In addition, we are compelled to review the propriety of the death sentence in this particular case.
In sentencing Clisby to death following the second remand, the trial court entered specific findings as to each of the statutory mitigating circumstances contained in § 13-11-7, Ala. Code 1975. The trial court concluded as follows:
 "`(1) The defendant has no significant history of prior criminal activity.' This circumstance is not applicable in that the defendant, as shown by the findings of fact from the sentence hearing by the Court as a part of this record had previously been convicted of the felony offense of burglary in the first degree (nighttime burglary of an inhabited dwelling with the intent to commit a felony) and also the felony offense of Murder in the Second Degree;
 "`(2) The Capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance.' This circumstance is not applicable in that Dr. Callahan having testified that he did not find any indication that the defendant committed the Capital felony while under the influence of extreme mental or emotional disturbance or that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law were substantially impaired.
 "`(3) The victim was a participant in the defendant's conduct or consented to the act.' This circumstance is not applicable in that there has never been any evidence presented in any of the hearings to show that the victim, Fletcher Handley, was a participant in the defendant's conduct or consented to the act.
 "`(4) The defendant was an accomplice in the Capital felony committed by another person and his participation was relatively minor.' This circumstance is not applicable in that there has never been any evidence introduced that there was ever an accomplice to the commission of the Capital felony by the defendant. To the contrary, it has been shown that the defendant acted alone in the commission of this Capital felony.
 "`(5) The defendant acted under extreme duress or under substantial domination of another person.' This circumstance is not applicable in that there has never been any evidence introduced at any of the hearings to show that any other person acted in concert with the defendant. To the contrary, the evidence has been that the defendant acted alone in the commission of the capital felony.
 "`(6) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.' Dr. Callahan stated that the defendant had not been suffering from any mental disorder other than possibly an `antisocial personality disorder.'
 "`A. In speaking to the Defendant I was unable to determine any disorder other than possibly antisocial personality disorder.
 "`Q. What do you mean antisocial personality disorder? *Page 108 
 "`A. That he has had difficulty in the past in conforming his conduct to the rules of society. That he is not respectful of the rights of others, that he has a poor work history. That his ability or his — to set long term goals is somewhat different.'
 "Dr. Callahan also testified that there was no indication of extreme emotional or mental disturbance:
 "`He (defendant) did not indicate to me that he was under any strong emotional distress or mental illness at any time in his life, I asked him on numerous occasions to give me any instance where he felt that he was under severe emotional distress and he said he could not. He said that any emotional or mental problems that he had were connected with drugs that he had used.'
 "The only other witness to testify at the new sentencing hearing was the defendant himself. He stated that he started having problems at the age of sixteen when his mother died and that he might have something `wrong' with him but was not sure. He testified that he `hate[d] it happened.'
"`Q. When did you begin hating that it happened?'
"`A. I would say after I had did it.'
 "Although this circumstance may exist in the form of `antisocial personality disorder' and the defendant now having shown some remorse in that he testified that he `hate[d] it happened,' the Court finds that this mitigating circumstance is outweighed by the aggravating circumstances as previously indicated.
 "`(7) The age of the defendant at the time of the crime.' This circumstance is not applicable in that at the time of the commission of the offense on, to-wit, November 6, 1979, the defendant was 32 years of age.
 "The Court having considered all the statutory mitigating circumstances and any additional mitigating evidence offered as shown above in No. (6) and further after consideration of all the matters that were presented to the Court during any of the hearings, both in mitigation and by aggravation and taking into consideration all other matters that were properly before the Court as hereinabove stated, this Court now does find and is convinced beyond a reasonable doubt and to a moral certainty that the aggravating circumstances as shown above and brought before this Court outweigh any mitigating circumstances as shown above and that the aggravating circumstances are sufficient to uphold the Jury's finding of punishment at death."
Petitioner contends that the trial judge erred in his consideration of the possible existence of statutory mitigating circumstances, particularly the possible existence of the subsection (6) mitigating circumstance that "[t]he capacity of the defendant to appreciate the criminality of his conduct or conform his conduct to the requirements of the law is substantially impaired." Petitioner claims that the evidence of mitigating circumstances was ignored. We cannot agree. Rather, we agree with the Court of Criminal Appeals, which found that the decision of the trial judge and his detailed findings reflect "an attitude of caution and deliberation proportionate to the finality and magnitude of the sentence imposed."
In keeping with the dictates of the United States Supreme Court in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954,57 L.Ed.2d 973 (1978), the sentencing authority in Alabama, the trial judge, has unlimited discretion to consider any perceived mitigating circumstances, and he can assign appropriate weight to particular mitigating circumstances. The United States Constitution does not require that specific weights be assigned to different aggravating and mitigating circumstances. Murry v.State, 455 So.2d 53 (Ala.Crim.App. 1984), rev'd on other grounds, 455 So.2d 72 (Ala. 1984). Therefore, the trial judge is free to consider each case individually and determine whether a particular aggravating circumstance outweighs the mitigating circumstances or vice versa. Moore v. Balkcorn,716 F.2d 1511 (11th Cir. 1983). The *Page 109 
determination of whether the aggravating circumstances outweigh the mitigating circumstances is not a numerical one, but instead involves the gravity of the aggravation as compared to the mitigation.
In the case at bar, the trial judge had the duty to consider both the aggravating and the mitigating circumstances. He considered the evidence that the defendant had six months previously been convicted of murder in the second degree and sentenced to twenty-seven years in the penitentiary. He also considered the evidence that the defendant suffered from an antisocial personality disorder, his unfortunate loss of his mother, and his upbringing, as well as his remorse, or lack of remorse, over the crime. In addition, the record reflects that the trial judge considered other statutory, as well as non-statutory, aggravating and mitigating circumstances in reaching his decision.
The order entered by the trial judge expressly states that:
 "The Court having considered all the statutory mitigating circumstances and any additional mitigating evidence offered . . . and further after consideration of all matters that were presented to the Court during any of the hearings, both in mitigation and by aggravation and taking into consideration all other matters that were properly before the Court . . ., this Court now does find . . . that the aggravating circumstances . . . outweigh any mitigating circumstances . . . [and] are sufficient to uphold the Jury's finding of punishment at death." (Emphasis added.)
Such an evaluation comports with the constitutional requirement of an individualized sentencing decision. Lockett, supra;Moore, supra; Ford v. Strickland, 696 F.2d 804 (11th Cir. 1983) (en banc).
As an additional point of error, petitioner asserts that the failure of the jury to specify the specific aggravating circumstances and mitigating circumstances considered in reaching its verdict renders Alabama's sentencing procedure unconstitutional. This Court has previously addressed this issue and has concluded that there is no statutory or constitutional requirement that the jury make specific findings of aggravating or mitigating circumstances considered during the sentence phase of the proceedings. The jury's verdict is advisory only. Section 13-11-4, Ala. Code 1975. It is sufficient that the trial court, which is in no way bound by the jury's recommendation concerning sentencing, is required to, and in this case did, make written findings concerning the existence or non-existence of each aggravating and mitigating circumstance. Whisenhant v. State, [MS. November 23, 1982] (Ala.Crim.App. 1982), aff'd in part and rev'd in part, [MS. 82-332, 82-333, July 8, 1983] (Ala. 1983); Bush v. State,431 So.2d 555 (Ala.Crim.App. 1982), aff'd, 431 So.2d 563 (Ala. 1983).
Petitioner also argues that death is not the appropriate sentence in this case. We are compelled by § 13A-5-53 (a), Ala. Code 1975, and under the mandates of Beck v. State,396 So.2d 645, 664 (Ala. 1980), to review the appropriateness of the sentence as regards this particular defendant. Having done so, we concur in the Court of Criminal Appeals' conclusion that Clisby's death sentence was properly arrived at and is appropriate, being neither excessive nor disproportionate under the circumstances of this case.
The decision of the Court of Criminal Appeals is hereby affirmed.
AFFIRMED.
All the Justices concur. *Page 110