JOINER, Judge,
concurring in part and concurring in the result in part.
I concur in all parts of the main opinion except Part XV; as to Part XV, I concur in the result. .
In his brief to this Court, Justin White argued:
“Each of the three times the court discussed the weighing process,' however, it merely instructed the jury to weigh the aggravating and mitigating circumstances against each other, without providing the guidance required by [§ 13A-5-46(e)(3), Ala.Code 1975,] on how jurors should vote once they complete the weighing process. (R. 629, 717, 727.) The trial court’s failure constitutes plain error because it prevented jurors from understanding¡ when they should recommend a sentence of life or death. See,, e.g., Ex parte McNabb, 887 So.2d 998, 1004 (Ala.2004); Ex parte Bryant, 951 So.2d 724, 730 (Ala.2002); California v. Brown, 479 U.S. 538, 541 (1987) (requiring clear and structured instructions).”
(White’s brief, pp. 92-93.)
Although I agree with the main opinion’s conclusion that “the circuit court instructed the: jury on how to vote after it weighed the aggravating circumstances and the mitigating circumstances,” 179 So.3d at 220, that determination does not necessarily mean that those instructions were free of plain error. -
White, as noted, specifically cites Ex parte McNabb, 887 So.2d 998 (Ala.2004), and Ex parte Bryant, 951 So.2d 724 (Ala. 2002), regarding the circuit court’s instructions in thjs case! In Ex parte. Mills, 62 *226 So.3d 574 (Ala.2010), the circuit court’s instructions to the jury regarding how to vote after it weighed the aggravating and mitigating circumstances were substantially similar to the instructions given in this case. The Alabama Supreme Court in Mills specifically held that those instructions did not constitute plain error under Bryant or McNabb.
Here, as noted in Mills,
“ ‘although the court did not specifically instruct the jury what to do if it found the mitigating and aggravating circumstances equally balanced, [I] cannot conclude, considering the charge in its entirety, that the error “seriously affect[ed] the fairness, integrity or public reputation of [these] judicial proceedings,” Ex parte Davis, 718 So.2d [1166,] at 1173-74 [ (Ala.1998) ], so as to require a reversal of the sentence.’ ”
62 So.3d at 600 (quoting McNabb, 887 So.2d at 1004). Additionally, I think “the trial court’s instructions, taken as a whole, clearly informed the jury that the only way it could recommend a sentence of death was if the jury determined that aggravating circumstances existed and that those aggravating circumstances outweighed the mitigating circumstances.” 62 So.3d at 601. Accordingly, I see “no plain error in the trial court’s instructions regarding the weighing of the aggravating circumstances and the mitigating circumstances.”- 62 So.3dat601. :

On Return to Remand

WINDOM, Presiding Judge.
Justin White appeals his two convictions for capital murder and his sentences of death. White was convicted of murder made capital for intentionally taking the life of Jasmine Parker during the course of a rape, see § 13A-5-40(a)(3), Ala.Code 1975, and during the course of a burglary, see § 13A-5-40(a)(4), Ala.Code 1975. The jury, by a vote of 9-3, recommended that White be sentenced to life in prison without the possibility of parole. The circuit court rejected the jury’s recommendation and sentenced White to death.
White appealed his convictions and sentences of death. On August 30, 2013, this Court affirmed his convictions but remanded this cause to “the circuit court with instructions for it to enter an amended sentencing order that fully complies with § 13A-5-47(d), Ala.Code 1975, and the requirements of Ex parte Carroll [, 852 So.2d 833 (Ala.2002) ] and Ex parte Taylor [, 808 So.2d 1215 (Ala.2001) ].” White v. State, 179 So.3d 170, 225 (Ala.Crim.App.2013).
On return to remand, White raises the following issues: 1) whether the circuit court’s rejection of the jury’s recommendation violates state and federal law[1]; 2) whether the circuit court incorrectly weighed the mitigating circumstance of White’s age at the time of the offense; 3) whether the circuit court failed to appropriately weigh White’s psychological disorders; 4) whether the circuit court incorrectly excluded from its consideration mitigating evidence; and 5) whether judicial override of a jury’s recommendation of life in prison without the possibility of parole violates the United States Constitution.
*227 i;
White first argues that compelling mitigation evidence supported the jury’s recommendation of life in prison without the possibility of parole and that the circuit court relied on improper considerations to override the jury’s recommendation. In support of this argument, White reiterates the mitigating evidence presented at trial. He then asserts 'that the circuit court overrode the jury’s recommendation based on the following “improper considerations: 1) that Mr. White would not be punished if he received a life in prison without parole sentence in this case because he had already received a life in prison-without parole sentence for the offense involving Sierrá Black; 2) that, although the defense did not offer remorse as a mitigating factor and Mr. White did not testify at either phase of trial, Mr. White should be sentenced to death due to his purported lack of remorse; and 3) the circuit court’s speculation that the jury in this case suffered from ‘"“pass the buck” syndrome ... as they know the trial judge will make the final decision.’ (Supp. C. 24.).” (White’s brief on return to remand, at 10.) White then asserts that “[t]he [circuit] court’s reliance on these improper bases for override, as well as its failure to find and consider significant, unrebutted mitigation evidence, rendered Mr. White’s sentencing fundamentally unreliable under state and federal law.” Id. at 10-11.
In this section of his brief, White does not cite any law, much less law supporting his , assertions. Accordingly, this portion of White’s brief does not comply with Rule 28(a)(10), Ala. R.App. P. Rule 28(a)(10) requires that an argument contain “the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on.” (Emphasis added.) Recitation, of allegations 'without citation to any legal authority and without adequate recitation of the facts relied upon has been deemed a waiver of the arguments listed. Hamm v. State, 913 So.2d 460, 486 (Ala.Crim.App.2002). “Authority supporting only ‘general propositions of law’ does not constitute a sufficient argument for reversal.” Beachcroft Props., LLP v. City of Alabaster, 901 So.2d 703, 708 (Ala.2004) (quoting Geisenhoff v. Geisenhoff, 693 So.2d 489, 491 (Ala.Civ.App.1997)). The Alabama Supreme Court has explained: .
“[I]t is not the function of this court to do' a party’s legal research. See Henderson[ v. Alabama A & M University], 483 So.2d [392,] 392 [ (Ala.1986) ]. Similarly, we cannot create legal arguments for a party based on undelineated general propositions unsupported by authority or argument. Ala. R.App. P. 28(a)(5) [now Rule 28(a)(10), Ala. R.App. P.]; Brittain v. Ingram, 282 Ala. 158, 209 So.2d 653 (1968) (analyzing the predecessor to Ala. R.App. P. 28); Ex parte Riley, 464 So.2d 92 (Ala.1985).”
Spradlin v. Spradlin, 601 So.2d 76, 78-79 (Ala.1992). To obtain review of an argument on appeal, an appellant must provide citations to relevant cases or other legal authorities and an analysis of why. those cases or other authorities support an argument that an error occurred and that the alleged error should result in reversal.
In this section of. his brief, White provides no citations, to authority. He pro-, vides this Court with no authority supporting his assertion that the circuit court considered improper factors in rejecting the jury’s recommendation. In fact, while stating that the circuit court’s judgment was “fundamentally unreliable under state and federal law,” White fails to state what law he believes was violated. Consequently, this section of White’s brief fails to *228 comply with Rule 28(a)(10), Ala. R.App. P., and does not entitle White to any relief.[2]
II.
White next argues that the circuit court’s rejection of the jury’s recommendation of life in prison without the possibility of parole violates the Alabama Supreme Court’s decisions in Ex parte Taylor, 808 So.2d 1215 (Ala.2001), Ex parte Carroll, 852 So.2d 833 (Ala.2002), and Ex parte Tomlin, 909 So.2d 283 (Ala.2003). White specifically contends that the circuit court’s override of the jury’s recommendation was improper because the circuit court: 1) failed to consider Jasmine’s family’s desire to forgive White; 2) gave little weight to the jury’s recommendation because it considered a sentence of life in prison without the possibility of parole to be no punishment; 3) improperly speculated about White’s lack of remorse; and 4) relied on its belief that juries “suffer from-‘pass the buck syndrome,’ to reject the jury’s life verdict.” (White’s brief on return to remand, at 1.)
This Court has explained:
“In Ex parte Taylor, 808 So.2d 1215 (Ala.2001), the Alabama Supreme Court considered the scope of § 13A-5-47(e), Ala.Code 1975, when it evaluated the legality of Taylor’s death sentence rfter the jury recommended, by a vote of 7 to 5, that Taylor be sentenced to life imprisonment without the possibility of parole. In upholding Taylor’s death sentence, the Alabama Supreme Court stated:
“ ‘In this case, the trial judge stated that “[t]he sentence recommendation of a properly functioning jury is entitled to great respect.” He reasoned, however, that “[w]hile the jurors in this case were cooperative, harmonious, diligent, and attentive, some jurors’ outbursts of emotion • after they found the defendant guilty, of capital murder indicated that they were overwhelmed by" their impending duty to cpnsider the death penalty as required by law.” The trial judge then concluded that the crimes proved against Taylor were “abominably aggravated and, at best, only faintly mitigated.” Thus, the trial judge considered the jury’s recommendation, as required by Alabama’s death-penalty statute, but permissibly assessed it very little weight, given the. particular circumstances, of this case. Therefore, we agree with the conclusion of the Court of Criminal Appeals that “the trial court complied with the sentencing scheme of Alabama’s death-penalty statute and that the sentence it imposed, overriding the. jury’s recommendation, met constitutional requirements and was not arbitrary, discriminatory, or fundamentally unfair.” Taylor v. State, 808 So.2d [1148] at 1190 [ (Ala.Crim.App.2000) ].’
“808 So.2d. at 1219. Ex parte Taylor was the first case to hold that when a circuit judge chooses to override a jury’s recommendation ..of life imprisonment without the possibility of parole, the judge must set out specific reasons for giving the jury’s recommendation the consideration that it did.
“The next year in Ex parte Carroll, [852 So,2d 88B (Ala.2002),] the Alabama Supreme Court considered the validity of a death sentence after the jury had recommended, by a vote of 10 to 2, life imprisonment without the possibility of *229 parole. The Supreme Court found that Carroll’s lack of a significant criminal history, .the victim’s family requests to spare Carroll’s life, and the jury’s 10 to 2 recommendation tiptped] the scales in favor’ of a .sentence of life imprisonment. The Supreme Court stated the following concerning the scope of § 13A-5-47(e), Ala.Code 1975:
“ ‘We take this opportunity to further explain the effect of a jury’s recommendation of life imprisonment without the ..possibility of parole. Such a recommendation is to be treated as a mitigating circumstance. The weight to be given.that mitigating circumstance should depend upon the number of jurors recommending a sentence of life imprisonment without parole, and also upon the strength of the factual basis for such a recommendation in the form of information known to the jury, such as conflicting evidence concerning the .identity -of the “triggerman” or a recommendation of leniency by the victim’s family; the jury’s recommendation may be overridden based upon information known only to the trial court and not to the jury, when such information can properly be used to undermine a mitigating circumstance.
«
““‘Given the jury’s recommendation of life imprisonment without parole; the recommendation of the victim’s family that the defendant be sentenced to life imprisonment without parole; the fact that the defendant was 17 years old when he committed the crime; and the circumstances of the crime (particularly that the defendant made no attempt to kill the witnesses to the crime), .,. the sentence of death is excessive and disproportionate,’
‘“852 So.2d at 828 (Houston, J., concurring in part and dissenting in part). Because of Carroll’s age at the time of the offense, his lack of a significant criminal history, and the recommendation of the victim’s family that he be sentenced to life imprisonment without parole, the jury’s 10 — 2 recommendation that he "not be sentenced to death tips the scales in favor of following the jury’s recomndendation. We therefore reverse the judgment of the Court of Criminal Appeals as to Carroll’s* sentence and retóand the case for that court to instruct the trial court to resentence Carroll following the jury’s recommendation of life imprisonment without the possibility of parole.’
“852 So.2d at 836-37.
“Later, in Ex parte Tomlin, 909 So.2d 283 (Ala.2003), the jury unanimously recommended that Tomlin be sentenced to life imprisonment without the possibility of parole and the court’s only explanation for overriding its recommendation was that Tomlin’s cqdefendant had been convicted of capital murder and sentenced tq death. The Alabama Supreme .Court, in setting aside the death sentence, stated:
<“.“[T]he death penalty should be carried out only after this Court has found it appropriate to do so by independently weighing the aggravating and mitigating circumstances” Ex parte Hays, 518 So.2d 768, 780 (Ala.1986) (opinion on rehearing). Therefore, while the tidal court, acting without the-guidance offered by Carroll, gave “serious consideration to the unanimous recommendation of the jury for life [imprisonment] without parole,” we are compelled to treat the jury’s recommendation as a mitigating circumstance. Indeed, we must give *230 that mitigating circumstance great weight.
“ ‘ “The weight to.be given [a jury’s recommendation of life imprisonment without the possibility of parole] should depend upon the number of jurors recommending a sentence of life imprisonment without .parole.” [Ex parte] Carroll, 852 So.2d [838] at 836 [ (Ala.2002) ]. In Carroll, we found that a jury’s 10-2 vote for a sentence of life imprisonment without the possibility.of.parole demonstrated “overwhelming support” of such a sentence. 852 So.2d at 837. Therefore, it is only logical to conclude that a unanimous recommendation like the one here provides even more “overwhelming support” of such a sentence and, therefore, must be afforded great weight.
[[Image here]]
“ ‘ “[T]he jury’s recommendation [of life imprisonment without the possibility of parole] may be overridden based upon' information known only to the trial court and not to the jury, when such information can properly be used to undermine a mitigating circumstance.” Carroll, 852 So.2d at 836. Here, the trial court overrode the jury’s recommendation, because “[t]he other perpetrator in this crime, John Ronald Daniels, was convicted of the capital offense of first degree murder of the same two people and [was] sentenced to.death.” Although the jury was not aware of Daniels’s sentence, his sentence cannot properly be used to undermine' a mitigating circumstance.’'’
“909 So.2d at 286-87.”
Scott v. State, 163 So.3d 453 (Ala.Crim. App.2012).
A.
White argues that “the [circuit] court [violated the Supreme Court’s holding in Ex parte Carroll when it] wholly failed to consider the victim’s recommendation of forgiveness” in support of a sentence of life in prison without parole. (White’s brief on return to remand, at 13.) This Court disagrees.
The Alabama Supreme Court’s decision in Ex parte Carroll to reverse an order overriding a jury’s recommendation of a sentence of life in prison without the possibility of parole was based, in part, on “the recommendation of the victim’s family that [the appellant] be sentenced to life imprisonment without parole.”' 852 So.2d at 837. In overriding the jury’s recommendation, the circuit court had relied on'the “ ‘pain of the victim’s famil/ as bhe of its reasons for overriding the jury’s recommendation.” Id. at 836. The Court explained that “the trial court’s reliance upon the ‘pain of the victim’s family’ as one of its reasons for overriding the jury’s recommendation ... [could not be reconciled'with the] wish of the victim’s family that Carroll be sentenced to life imprisonment without parole rather than sentenced to death.” Id.
In the instant case, the record does not indicate that Jasmine’s family recommended that White be sentenced to life imprisonment without the possibility of parole. Vanessa Parker, Jasmine’s mother, testified during the penalty phase. During cross-examination Vanessa was asked whether she had told a detective “that you have to forgive people, so that God can forgive you.” (R. 638.) Vanessa replied, “Absolutely. I believe that.” (R. 638.)
Vanessa’s testimony established that she believed that she had to forgive others so that God would forgive her. Her testimony, however, was not a recommendation that the circuit court impose a sentence of life in prison without the possibility of *231 parole. Accordingly, White’s assertion is refuted by the record and is without merit.
B.
White also asserts that the circuit court improperly considered a sentence of. life in prison without the possibility of parole to be no punishment because White was already serving a sentence of life in prison without the possibility of parole for the murder of Sierra Black.[3] According to White, his sentence resulting from his capital-murder conviction for Black’s murder did not undermine any of the mitigating circumstances presented at trial; therefore, the circuit court improperly relied on that sentence in. weighing,the jury’s recommendation. White also argues that the circuit court committed error when it asserted that White “would not be punished for the Parker case if he only received a life sentence.” (White’s brief on return to remand, at 15.) White asserts that the circuit court’s reasoning amounted to a mandatory sentence of death in violation of Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982).
In a section of its amended sentencing order entitled- “Reasons for Giving the July’s Recommendation the Weight that the Trial Court Gave It,” the circuit court stated that it assigned great weight to the jury’s recommendation but that it
“[did] not believe that the recommendation of the jury fully accounted for the great weight that it should have given to the evidence regarding the additional killing of Sierra Black, and the fact that the defendant was already under a sentence of life without parole in the Black murder case. To not increase the defendant’s sentence in the Parker murder, would be to give the defendant no punishment at all as it relates to causing her death.”
(Supp. C. 21.)
Here, in explaining why the circuit court gave the jury’s recommendation the weight that it was given, the circuit court properly explained why it believed that the jury failed to give adequate weight to the aggravating circumstance that White previously had been “convicted of another capital offense or a felony involving the use or threat of violence to the person.”[4] § 13A-5-49(2), Ala Code 1975. .Further, nothing in the circuit court’s statement indicates that it believed that a sentence of death was mandatory in violation of Wood-son, Lockett, and Eddings.
Because the circuit court’s statement relating to White’s previous capital-murder conviction and sentence did not indicate that it believed a death sentence was mandatory but rather merely explained why it believed the jury had not given sufficient weight to an aggravating circumstance, no error occurred. Therefore, this issue does not entitle White to any relief.
C.
White next asserts that the circuit court improperly “relied heavily” on its observa *232 tion that White showed no sign of remorse when it overrode the jury’s recommendation. . White contends that the circuit court’s consideration of his lack of remorse constituted a nonstatutory.'aggravating.cir-cumstance and violated his privilege against self-incrimination.
In its amended sentencing order the cir-eüit court noted that “during the trial, the Court looked for, but never found, any sign that the defendant had the slightest bit of remorse for his actions in murdering Jasmine.” (Supp. C. 21-22.)
1.
White contends that the - circuit court’s reference to his lack, of remorse constituted a nonstatutory aggravating circumstance because White had not offered remorse, as a mitigating circumstance.
A circuit court may consider lack of remorse when it is offered to rebút remorse offered in mitigation. See Smith v. State, 756 So.2d 892, 912 (Ala.Crim.App.1997). A circuit court may not, however, consider lack óf remorse in deciding whether an aggravating circumstance exists. See Scott v. State, 937 So,2d 1065, 1084 (Ala.Crim.App.2005).
In Burgess v. State, 827 So.2d 134 (Ala. Crim.App.1998), this Court addressed a claim that the circuit court had improperly “considered the following as aggravating circumstances: ‘lack of appreciation for human life’; a ‘perceived lack of remorse’; ‘premeditation’; and the fact that ‘Mr. Burgess was sane at the time he committed the crime.’” Burgess, 827 So.2d at 181. This Court explained:
“Upon reviewing the entire sentencing order, we do not believe the trial court either enunciated or considered non-statutory aggravating circumstances in arriving at the sentence. We note that in the paragraph of the sentencing order labeled ‘Aggravating Circumstances,’ the trial court found the existence of one aggravating circumstance — that ‘the defendant committed the capital offense while he .was engaged in the commission of the offense of robbery in the first degree.’ In the next paragraph, labeled ‘Statutory Mitigating Circumstances,’ the trial court discussed each of the mitigating circumstances defined in § 13A-5-51, [Ala.Code 1975,] and determined that Burgess’s age at the time of the offense and.Burgess’s lack, of a significant history of prior criminal activity were mitigating circumstances. The next paragraph, ‘Nonstatutory Mitigating Circumstances,’ reviews the evidence concerning Burgess’s character, his family history, and his capacity to appreciate the criminality of his conduct and to conform his conduct the requirements of the law. The trial court found each of those circumstances to exist as a non-statutory mitigating circumstance. It was within this' discussion of the evidence of nonstatutory mitigating circumstances that the trial court commented on the sincerity of Burgess’s show of remorse, and which included its finding that while Burgess was not incompetent, insane, or suffering from diminished capacity, he did have a personality disorder. We find that the tidal court’s written discussion of the facts presented at sentencing as mitigating evidence is not a finding or a consideration of nonstatu-tory aggravating circumstances.”

Id.

.Likewise, upon reviewing the entire amended sentencing order in the instant case, this Court does not believe that the circuit court’s observation of White’s lack of remorse demonstrated that the circuit court considered a nonstatutory aggravating circumstance. Under the section of the amended sentencing order entitled “Aggravating Circumstances,” the circuit *233 court found that: “1) the capital offense was committed while the defendant was engaged in a rape; 2) the capital offense was committed while the defendant was engaged in a burglary; [and] 3) the defendant was previously convicted of another capital offense, which was the murder and rape of Sierra Black.” (Supp. 0.18.) The circuit court did not find lack of remorse as a aggravating circumstance. See Lane v. State, 169 So.3d 1076, 1132 (Ala.Crim.App.2013). Rather, the circuit court mentioned White’s apparent lack of remorse when discussing why it had rejected the sentencing recommendation of the jury. Further, White’s lack of remorse tended to undermine mitigation evidence indicating that White suffered from impulse control problems that may have contributed to Jasmine’s murder. Hosch v. State, 165 So.3d 1048, 1096 (Ala.Crim,App.2013) (lack of remorse may be considered when it undermines mitigating evidence). Therefore, this issue is without merit.
2,
White also argues that the circuit court’s reference .to his lack of remorse violated his privilege against self-incrimination. ,This Court disagrees.
In explaining why it rejected the sentencing recommendation of the jury, the circuit court noted that “during the trial, the Court looked for, but never found, any sign that [White] had the slightest bit of remorse for his actions -in murdering Jasmine.” (Supp. C. 21-22.) The circuit court’s statement did not, as White contends, relate to his failure to testify. Rather, the circuit court’s statement related to its observation' of White’s demeanor during the trial. Cf. Kelley v. State, [Ms. CR-10-0642, Mar. 14, 2014] * (holding that the prosecutor’s comment relating to the defendant’s demeanor at trial and lack of remorse was not .error). Therefore, White’s argument is without merit.
Moreover, in 'Hoseh, this Court recently addressed a similar argument. Specifically, this Court noted:
“Hoseh has cited no controlling case law that holds that the mere mention of Hosch’s lack bf remorse iri 'the trial court’s discussion of Its weighing of the nonstatutory mitigation violated the Fifth Amendment.' Furthermore, the mention of the lack of remorse in the discussion of the court’s weighing of the mitigating circumstances was not error. Burgess v. State, 827 So.2d [134,] 181-82 [(Ala.Crim.App.1998)]. See also Billups v. State, 72 So.3d 122, 136 (Ala.Crim.App.2010) (trial court found that defendant’s attempt' to set up false alibi witnesses diminished the weight accorded nonstatutory mitigating circumstances); Revis v. State, 101 So.3d 247, 320-21 (Ala.Crim.App.2011) (trial cóurt mentioned defendant’s lack of remorse when discussing the weight it assigned to a statutory mitigating circumstance).”
Hosch, 156 So.3d at 1095.
White, likewise, has not cited any controlling caselaw, holding - that the mere mention of White’s lack of remorse by the circuit court in its. discussion of why it overrode the jury’s recommendation violated his privilege against self-incrimination. Accordingly, this issue does not entitle White to any relief. .
D.
White asserts that the' circuit court committed error when it relied on its *234 belief that juries “pass the buck” to the circuit court for sentencing.
In its amended sentencing order, '.the circuit court stated:
“Of course, the last non-statutory mitigating circumstance to be considered by the Court was the jury’s advisory sentencing verdict which this Court has already discussed. Over my past years of experience, the Court has realized that juries can be unpredictable. Although the Court cannot see into the mind of a juror, ,the Court believes that the juries .in Jefferson County understand through the media and from prior jury service that their sentencing verdict is advisory and that the trial judge will issue the final sentence. This, the Court believes, may cause a kind of ‘pass the buck’ syndrome to exist in the jury’s mind as they know the trial judge will make the final decision. The Court finds that this probably influenced the jury in making a recommendation which was contrary to the evidence presented.”
(Supp. C. 24.)
White contends that the circuit court’s statement was error because no evidence regarding the knowledge juries have about the sentencing process was before the circuit court and what juries know about the sentencing process cannot be used to negate a mitigating circumstance.
’ Assuming, without deciding that the circuit court erred in its reasoning; however, error, if any, in the circuit court’s statement was harmless beyond a reasonable doubt. Rule 45A, Ala. R.App. P.; Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
In Lewis v. State, 889 So.2d 623 (Ala.Crim.App.2003), this Court stated:
‘“The United States Supreme Court has recognized .that most errors do not automatically render a trial unfair and, thus, can be harmless.’ Whitehead v. State, 777 So.2d 781, 847 (Ala.Crim.App. 1999), aff'd, 777 So.2d 854 (Ala.2000), cert. denied, 532 U.S. 907, 121 S.Ct. 1233, 149 L.Ed.2d 142 (2001), citing Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).
“‘After finding error, an appellate court may still affirm a conviction or sentence on the ground that the error was harmless, if indeed it was. Chapman [v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)]; Sattari v. State, 577 So.2d 535 (Ala.Crim.App.1990), cert. denied, 577 So,2d 540 (Ala.1991); [Ala] R.App. P. 45.... In order for a constitutional error to be deemed harmless under Chapman, the state must prove beyond a reasonable doubt that the error did not contribute to the verdict and/or sentence. In order for a non-constitutional error to be deemed harmless, the appellate court must determine with “fair assurances ... that the judgment was not substantially swayed by the-error.” Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). See Brecht, v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); Vines v. United States, 28 F.3d 1123, 1130 (11th Cir.1994).... In order for the error to be deemed harmless under Ala. R.App. P. 45, the state must establish that the error did not or probably did not injuriously affect the appellant’s . substantial rights. The purpose of the harmless error rule is to avoid setting aside a conviction or sentence for small errors or defects that have little, if any, likelihood of changing the result of the trial or sentencing.’
“Davis v. State, 718 So.2d 1148, 1164 (Ala.Crim.App.1995), aff'd, 718 So.2d *235 1166 (Ala.1998), cert. denied, 625 U.S. 1179, 119 S.Ct. 1117, 143 L.Ed.2d 112 (1999).”
889 So.2d at 666.
The record in the instant case demonstrates that the statement of which White complains was harmless and that it did not affect his substantial rights. The circuit court’s statement came at the end of the section of the amended sentencing order in which the circuit court gave its reasons for overriding the jury’s recommendation. Before this statement, the circuit court had already determined “that the recommendation of the jury fully accounted for the great weight that it should have given to the evidence regarding the additional killing of Sierra Black, and the fact that the defendant was already under a sentence of:life without parole in the Black murder case,” (Supp. C. 21.) Here, the circuit court gave the jury’s recommendation great weight and provided detailed reasons why it rejected the jury’s recommendation. Accordingly, error, if any, in the circuit court’s. statement that juries tend to rely on the court as the ultimate decision maker was .harmless. • Rule 45A, Ala. R.App. P.
III.
White asserts that the circuit court failed to appropriately weigh the mitigating circumstance of his age at the time of the offense. In its amended sentencing order, the circuit court stated:
“The trial court finds the following statutory mitigating circumstance to exist: 1) the age of the defendant at the time of the offense, i.e. nineteen (19) years-old.
“This Court assigns little weight to this factor based on the defendant’s pri- or criminal record. After further review of the pre-sentence report that was prepared for the Court, the defendant showed having a prior juvenile record; along with the prior capital conviction in Bessemer in 2006, a Burglary Second-Degree case and a Rape Second-Degree case where probation was closed in 2002 and 2005 respectivély. His traffic citations held no weight with the Court.”
(Supp. C. 19.)
White .specifically argues that the “trial court’s refusal. to accord this mitigating circumstance great weight was error and cannot be reconciled with the constitutionally significant considerations releyant- to Mr. White’s young age.” (White’s brief on return to .remand, at 21.) This Court addressed a similar argument in Riley v. State, 166 So.3d 718 (Ala.Crim. App.2013). In Riley, this Court explained:
“ ‘ “[l]n keeping with the' dictates 'of the United States Supreme Court in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the sentencing authority in Alabama, .the trial judge, has unlimited discretion to consider any perceived mitigating circumstances, and he can assign appropriate weight to particular mitigating circumstances. The United States Constitution does not require that specific weights be assigned to. different aggravating and mitigating circumstances. Murry v. State, 455 So.2d 53 (Ala.Crim.App.1983), rey’d on other grounds, 455 So.2d 72 (Ala.1984). Therefore, the trial judge is free to consider each case individually and determine whether a particular aggravating circumstance outweighs the mitigating circumstances or vice versa. Moore v. Balkcom 716 F.2d 1511 (11th Cir.1983). The determination of whether the aggravating circumstances outweigh the mitigating circum *236 stances is not a numerical one, but instead involves the gravity of the aggravation as compared to the mitigation.”
“ ‘Ex parte Clisby, 456 So.2d 105, 108— 09 (Ala.1984), cert. denied, Clisby v. Alabama, 470 U.S. 1009, 105 S.Ct. 1372, 84 L.Ed.2d 391 (1985).
“Morris v. State, 60 So.3d 326, 851 (Ala.Crim.App.2010). See also Haney v. State, 603 So.2d 368, 389 (Ala.Crim.App. 1991) (‘It is not required that the evidence submitted by the accused as a non-statutory' mitigating' circumstance be' weighed'as a mitigating circumstance by the sentencer, in this case, the trial court; although consideration of all mitigating circumstances is required, the decision of whether a particular mitigating circumstance is proven and the weight to be given it rests with the sentencer.’) (citing Cochran v. State, 500 So.2d 1161 (Ala.Crim.App.1984), aff'd in pertinent part, remanded on other grounds, 500 So.2d 1179 (Ala.1985), aff'd on return to remand, 500 So.2d 1188 (Ala.Crim.App.), aff'd, 500 So.2d 1064 (Ala.1986)).”
Riley, 166 So.3d at 728.
In the instant case, the circuit court found White’s age at the time of the offense to be a mitigating factor. The weight to be assigned that mitigation is completely within the circuit court’s discretion. Id, There is nothing in the record indicating that the circuit court abused its discretion in weighing this circumstance; therefore, this issue does not entitle White to any relief.
IV.
White contends that the circuit court failed to appropriately weigh evidence of White’s diagnoses of attention-defieit/hyperactivity disorder (“ADHD”) and intermittent explosive disorder (“IED”). This Court disagrees. 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), requires that a circuit court consider all evidence offered in mitigation when determining a capital defendant’s sentence. However,
“The United States Supreme Court’s decision in Lockett v. Ohio, 438 U.S. 586,
“ ‘ “[M]erely because an accused proffers,, evidence of a mitigating circumstance does, not require the judge or the jury to find the existence of that fact. Mikenas [v. State, 407. So.2d 892, 893 (Fla.1981)]; Smith [v. State, 407 So.2d 894 (Fla.1981)].” Harrell v. State, 470 So.2d 1303, 1808 (Ala.Cr. App.1984), aff'd, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985).
“Perkins v. State, 808 So,2d 1041 (Ala. Crim.App.1999). ‘ “Although the' trial court must consider all mitigating circumstances, it has discretion in-determining whether a particular mitigating circumstance is proven and the weight it will give that circumstance.” ’ Simmons v. State, 797 So.2d 1184, 1182 (Ala.Crim.App.1999), quoting Wilson v. State, 777 So.2d 856, 893 (Ala.Crim.App.1999). ‘“While Lockett [v. Ohio, 438 U.S. 586 (1978),] and its progeny require consideration of all evidence submitted as mitigation, whether the evidence is actually found to be mitigating is in the discretion of the sentencing authority.” ’ Ex parte Slaton, 680 So.2d 909, 924 (Ala.1996), quoting Bankhead v. State, 585 So.2d 97, 108 (Ala.Crim.App.1989).”
Albarran v. State, 96 So.3d 131, 212-18 (Ala.Crim.App.2011).
. In its amended sentencing order, the circuit court found as nonstatutory mitigating circumstances that White suffered from ADHD and IED. The circuit court stated the .following regarding the weight it gave to these mitigating circumstances:
“The defense’s psychiatrist, Dr. Alan Shealy, testified that the defendant was *237 not psychotic, was competent to stand trial) knew-■ what he was doing at the time of the murder, and that killing Jasmine Parker was wrong.
“In the Court’s mind this testimony greatly over shadowed the testimony that the defendant was young, had ADHD, and had a conduct disorder referred to as Intermittent Explosive Disorder. Dr. Shealy further testified that the defendant was not delusional, nor did he suffer from hallucinations. He also stated that White’s reality was unimpaired. Furthermore, he testified that impulse control was a part of ADHD. ■
"In weighing the testimony concerning the mitigating circumstances of ADHD this Court gave little weight to said testimony. Regarding- the Intermittent Explosive Disorder, this Court notes that the first time this disorder was mentioned was during the sentencing hearing and also gave it little weight.” ' ■
(Supp. C. 20-21.)
In the instant case, the circuit court found White’s diagnoses of ADHD and IED’ to be mitigating evidence and weighed them as such. The weight to be assigned that mitigation is completely within the circuit court’s discretion. Riley, 166 So.3d at 719. There is nothing in the record indicating that the circuit court abused its discretion in weighing these mitigating circumstances. Accordingly, White is due no relief on this claim.
V.
White next argues that the circuit court improperly refused to consider mitigating evidence. According to White, the circuit court refused to consider the following mitigating circumstances: 1) that White suffered from a “serious .psychological disease;”[5] 2) that White had diagnoses of mental disorders at the age of 4 and was in the care of psychologists and psychiatrist between the ages of 4 and 19; 3) that White had been admitted to a mental-health facility; .4) that White suffered from emotional problems stemming, in part, from his adoption and lack of information about his biological parents; 6) that White had “a family who loved and cared for him;” and 6) that “the victim’s family had asked for forgiveness.” (White’s brief - on return to remand, át 27.)
A.
Most of . the evidence to which White refers involves his mental health and his family’s love and concern for him. This Court has explained:
“ ‘The circuit court must consider evidence offered in mitigation, but it is not obliged to find that the evidence constitutes a mitigating circumstance.’ Calhoun v. State, 932 So.2d 923, 976 (Ala.Crim.App.2006). ‘Merely because an accused proffers evidence of a mitigating circumstance does not require the judge or the jury to find the existence of that fact.’ Harrell v. State, 470 So.2d 1303, 1308 (Ala.Crim.App.1984).
“ ‘It is not required that the evidence submitted by the accused as a, non-statutory mitigating circumstance be weighed as a mitigating circumstance by the sentence, in this case, the trial court; although consideration of all mitigating circumstances is required, the decision of whether a particular mitigating circumstance is proven and the weight to be given it rests with the sentencer. Cochran v. State, 600 So.2d 1161 (Ala.Crim.App.1984), aff'd in pertinent part, remanded on other part, 600 So.2d 1179 (Ala.1985), aff'd *238 on return to remand, 500 So.2d 1188 (Ala.Cr.App.), aff'd 500 So.2d 1064 (Ala.1986), cert. denied, 481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 537 (1987).’
“Haney v. State, 603 So.2d 368, 389 (Ala. Crim.App.1991). See also Ex parte Hart, 612 So.2d 536, 542 (Ala.1992).”
Scott v. State, 163 So.3d 389, 456 (Ala. Crim.App.2012).
In the instant case, the record clearly demonstrates that the circuit court considered all mitigating evidence offered by White. In its amended sentencing order, the circuit court noted that during the penalty phase White presented evidence consisting of testimony from his adoptive mother and father. The circuit court also noted that White had “called an expert witness who testified regarding White’s background from a review of medical records, mental health treatment records, and school records.” (Supp. C. 16-17.) Before sentencing White, the' circuit court “received, reviewed and considered a written presentence investigation report.” (Supp. G. 17.) The circuit court noted that “[n]onstatutory mitigating circumstances included testimony and a finding by the Court that the defendant [suffered from ADHD and IED].” (Supp. C. 23; emphasis added.) Although White argues that the circuit court did not consider his diagnosis of IED, the circuit court found it to be a nonstatutory mitigating circumstance. Because the record demonstrates that the circuit court considered the mitigating evidence presented, White is due no relief on this claim.
B.
White also contends that the circuit court did not consider “uncontested evidence that ... the victim’s family had asked for forgiveness.” (White’s brief on return to remand, at 27.) This Court disagrees.
As explained in Part II.A. of this opinion, Vanessa Parker did not ask for forgiveness for White or recommend that the circuit court impose a sentence of life in prison without the possibility of parole. Rather, during cross-examination Vanessa was asked whether she had told a detective “that you have to forgive people, so that God can forgive you.” (R. 638.) Vanessa replied, “Absolutely. I believe that.” (R. 638.) As stated in Part II.A. of this opinion, Vanessa’s testimony established that she believed that she had to forgive others so that God would forgive her. She did not, as White asserts, ask for forgiveness for White. Because Vanessa did not ask for forgiveness for White, this argument is refuted by the record and is without merit. See Albarran, 96 So.3d at 160 (recognizing that claims that are refuted by the record are without merit).
VI.
White also asserts that judicial override of a jury’s recommendation of a sentence of life imprisonment without the possibility of parole is unconstitutional. Specifically, White contends that Alabama’s judicial-override provision: 1) is standardless and “frequently leads to arbitrary and freakish results;” 2) violates Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); and 3) “constitutes a violation of the Equal Protection Clause.” (White’s brief on return to remand, at 31, 36.)
Section 13A-5-47, Ala.Code 1975, commonly referred to as the judicial-override statute, provides:
“In deciding upon the sentence, the trial court shall determine whether the aggravating circumstances it finds to exist outweigh the mitigating circumstances it finds to exist, and in doing so the trial court shall consider the recommendation of the jury contained in its
*239 advisory verdict, unless such a verdict has been waived pursuant to Section 13A-5-46(a) or 13A-5-46(g). While the jury’s recommendation concerning sentence shall.be given consideration, it is not binding upon the court.”
§ 13A-5-47(e), Ala.Gode 1975.
A.
•White argues that Alabama’s judicial-override provision is without standards and “frequently leads to arbitrary and freakish results.” (White’s brief on return to remand, at 31.) This Court disagrees.
In addressing a similar argument, this Court explained:
“Initially, this Court’’ notes that the Constitution of the United States does not prohibit vesting the final sentencing authority in the'circuit court. See Spaziano v. Florida, 468 U.S. [447] at 465 [(1981)]. Further, in Harris v. Alabama, the Supreme Court of the United States held that Alabama’s sentencing standard, which (at that time) required only that the judge consider the jury’s advisory opinion, was ‘consistent with established constitutional law.’ 513 U.S. 504, 511 (1995). The Court went on to explain that ‘the Eighth Amendment does not require the State to define the weight the-sentencing judge must accord an advisory jury verdict.’ 'Id.' at 512. Therefore, Mitchell’s argument that Alabama’s judicial-override provision is unconstitutional is without merit. '
“Moreover, Alabama’s judicial-override provision is not; as Mitchell asserts, standardless. ■ In rejecting the argument that Alabama’s judicial-override provision is standardless, • the Alabama Supreme Court has held:
“ ‘This Court in Ex parte Apicella, 809 So.2d 865 (Ala.2001), upheld the constitutionality, of having a judge, not the jury, determine the punishment in a capital case. In Ex parte Taylor, 808 So.2d 1215 (Ala.2001), this Court held that the capital-sentencing procedure set forth in §§ 13A-5-47 and 13A-5-53, Ala.Code 1975, provided sufficient guidance to prevent the arbitrary and’ capricious imposition of a death sentence. Specifically, the Court noted that the capital-sentencing procedure “ensures that the trial judge is given adequate information and sufficient guidance in deciding whether to accept or to reject a jury’s recommended sentence” and that § 13A-5-53, Ala.Code 1975, provided sufficient guidelines for an appellate determination of “whether a trial judge’s override of the jury’s recommendation is appropriate in a particular case.” 808 So.2d at 1219.’
“Ex parte Jackson, 836 So.2d 979, 989 (Ala.2002). See also Ex parte Carroll, 852 So.2d 833, 836 (Ala.2002) (establishing standard under which the circuit court must weigh a jury’s recommendation of life in prison without the possibility of parole). Accordingly, Mitchell’s argument that Alabama’s judicial-override provision is ‘standardless’ and thus ‘unconstitutional’ is without merit.”
Mitchell v. State, 84 So.3d 968, 993 (Ala. Crim.App.2010)
As in Mitchell, White’s argument that Alabama’s judicial-override provision is unconstitutionally standardless is without merit. Id. Therefore, this issue does not entitle him to any relief.
B.
White reasserts an argument he made in his original brief — that Alabama’s system of judicial-override violates Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). In our original opinion, this Court addressed his argument as follows:
*240 “White next argues that his death sentence must be vacated in light of Ring v. Arizona, 536 U.S 584, 122.S.Ct. 2428, 153 L.Ed.2d 556 (2002). Specifically, White argues that his death sentence is invalid under Ring because the jury did not unanimously find- that an aggravating, circumstance existed and-because the jury did not unanimously find that the aggravating circumstances outweighed the mitigating circumstances. White also argues that decision to impose the death penalty must be made by the jury as opposed to a judge. Finally, White argues that this. Court should overrule, the Alabama Supreme Court’s decision in Ex parte Waldrop, 859 So.2d 1181 (Ala.2002).
“In Ring, the United.States Supreme Court applied its earlier holding in Apprendi v. New Jersey, 630 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to death-penalty cases and held that, under the Sixth Amendment, a capital defendant is ‘entitled to a jury determination of any fact [other than a prior conviction] on which the legislature conditions an increase in their maximum punishment. Ring, 536 U.S. at 589, 600. In Ex parte Waldrop, 859 So.2d 1181 (Ala. 2002), the Alabama Supreme Court applied Ring to a similar situation-and held:
“‘[W]hen a , defendant is found guilty of a capital offense, “any aggravating circumstance .which the verdict convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of- the sentencing hearing.” Ala.Code 1975, § 13A-5-45(e); see also Ala. Code 1975, § 13A-5-50 (“The fact that a particular capital offense as defined in Séction 13A-5-40(a) necessarily includes one or more aggravating circumstances as specified in Section 13A-5-49 shall not be construed to preclude the finding and consideration of that relevant circumstance or circumstances in determining sentence.’?)-. This is known as “double-counting” or- “overlap,” and Alabama courts “have repeatedly upheld death sentences where the only aggravating circumstance supporting the death sentence overlaps with an element of the capital offense." Ex parte Trawick, 698 So.2d 162, 178 (Ala.1997); see also Coral v. State, 628 So.2d 954, 965 (Ala.Crim.App.1992).
“‘Because the jury convicted Wal-drop of two counts of murder during a robbery in the first degree, a violation ..of Ala.Code 1975, § 13A-5-40(a)(2), the statutory aggravating circumstance of committing a capital, offense while engaged in the commission of a robbery, Ala.Code 1975, § 13A-5-49(4), was. “proven beyond a reasonable doubt.” Ala.Code 1975, § 13A-6—45(e); Ala.Code 1976, § 13A-5-50. Only one aggravating circumstance must exist in order to impose a sentence of . death. Ala.Code 1975, § 18A-5-45(f). Thus, in Waldrop’s case, the jury, and not the trial judge, determined the existence of the “aggravating circumstance necessary for imposition of the death penalty.” Ring, 536 U.S. at 609, 122 S.Ct. at 2448. Therefore,,., the findings reflected in the jury’s verdict alone exposed Waldrop to a range of punishment that had as its maximum the death penalty. This is all Ring [v. Amona, ,586 U.S. 584 (2002),] and Apprendi [v. New Jersey, 530 U.S. 466 (2000),] require,
“859 So.2d at 1188.
“Like Waldrop, White was convicted of capital offenses that- have corresponding aggravating circumstances, i.e., mur *241 der during the course of a rape and murder during the course of a burglary. See §§ 13A — 6—40(a)(3), 18A-5-40(a)(4), 13A-5-49(4), Ala.Code 1975. Accordingly, the jury’s verdict finding White guilty of the two counts of capital murder, established that the jury unanimously found that aggravating circumstances existed. Because the jury’s guilt-phase verdict established that’the .jury found a fact necessary to expose White to a sentence of death, White’s Sixth Amendment right to a jury was not violated.
“To the extent White argues that the Supreme Court’s holding in Ring was violated because the jury did not unanimously find that the aggravating circumstances outweighed the mitigating circumstances, this 'argument is likewise without merit. In Waldrop, the Alabama Supreme Court addressed an identical issue and held:
“‘The determination whether the aggravating circumstances outweigh the mitigating circumstances is not a. finding of fact or an element of the offense. Consequently, Ring [v. Arizona, 586 U.S. 584 (2002),] and Ap-prendi [v. New Jersey, 580 U.S. 466 (2000),] do not require that a jury weigh the aggravating circumstances and the mitigating circumstances.’
“Id. at 1190. Because the balancing of the aggravating and mitigating circumstances, i.e., the sentencing determination itself, is not a finding of fact that was necessary to expose 'White to a sentence of death, his death sentence does not violate Ring and Apprendi Consequently, White is not entitled "to any relief on this issue.
“Finally, to the extent White argues that only juries may impose a sentence of death, his argument is without merit. In Mitchell v. State, 84 So.3d 968, 993 (Ala.Crim.App.2010), this Court explained that judicial sentencing in capital cases is. constitutional. Specifically, this Court held
“ ‘that the Constitution of the United States does not prohibit vesting the final sentencing authority in the circuit court. Sec Spazanio v. Florida, 468 U.S. [447,] 465 [ (1984) ].' Further, in Harris v. Alabama, the Supreme Court of the United States held that-Alabama’s sentencing standard, which (at that-time) required only that the judge consider the jury’s advisory opinion, was- “consistent with established constitutional law.” 513 U.S. 504, 511, 115 S.Ct. 1081, 180 L.Ed.2d 1004 (1995).' The Court went on to explain that “the Eighth Amendment does not require the State to define the weight the sentencing judge must accord an advisory jury verdict.” Id at 512. Therefore, Mitchell’s argument that Alabama’s judicial-override provision is unconstitutional is without merit.’
“Mitchell, 84 So.3d at 993. See also Ex parte Taylor, 808 So.2d 1215, 1218-19 (Ala.2001) (holding that the Constitution does not prohibit judicial sentencing); Hodges v. State, 856 So.2d 875, 934 (Ala.Crim.App.2001) (same).
“Because the Constitution does not, as White argues, prohibit judicial sentencing'in capital cases, his argument that only juries may impose, a sentence of death is without merit. Therefore, this issue does not entitle White to any relief.” '
White v. State, 179 So.3d 170, 220-22 (Ala.Crim.App.2013) (footnote omitted).
As this Court concluded prior to the remand of this case, White’s argument is without merit and does not entitle him to any relief.
*242 C.
White also contends that “Alabama’s judicial-override provision constitutes a violation of the Equal Protection Clause” because, as a result of Alabama’s standardless judicial-override provision, similarly situated capital defendants have not been sentenced to death. (White’s brief on return to remand, at 36.)
Initially, this Court notes that White has not provided any evidence indicating that similarly situated capital-murder defendants have been treated differently. Accordingly, he has failed to meet his burden to establish that an Equal Protection Clause violation resulted from the circuit court’s decision to override the jury’s recommendation. See Patterson v. State, 6 So.3d 35, 40 (Ala.Crim.App.2008).
Moreover, this Court has repeatedly rejected similar arguments that Alabama’s judicial override violates the Equal Protection Clause. See Scott v. State, 163 So.3d 389, 460 (Ala.Crim.App.2012); Dosier v. State, 72 So.3d 50, 105 (Ala.Crim.App.2010); Lee v. State, 898 So.2d 790, 857 (Ala.Crim.App.2001). In Lewis v. State, this Court rejected a similar argument as follows:
“Lewis also contends that our death-penalty scheme violates the Equal Protection Clause because, he says, it is arbitrary and disparate in that it fails to set forth uniform standards as to the weight a trial court must give a jury’s sentencing recommendation. As authority for this proposition, Lewis cites the decision in Bush v. Gore[, 531 U.S. 98, 121 S.Ct. 525 (2000) ]. We fail to see how this decision lends support for Lewis’s claim, given that the Supreme Court took care to state that its decision was ‘limited to the present circumstances,’ noting that ‘the problem of equal protection in election processes generally present many complexities.’ 531 U.S. at 109, 121 S.Ct. [at 532]. Moreover, in Harris v. Alabama, 513 U.S. 504, 511-15, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995), the United States Supreme Court rejected a claim that Alabama’s death penalty statute was unconstitutional because it did not specify what weight the trial court must afford a jury’s recommendation. Alabama courts have rejected similar claims that trial judges deprive defendants of equal protection under the law by employing different processes in determining what weight to give a jury’s recommendation as to sentencing. See, e.g., Smith v. State, 756 So.2d 892, 920 (Ala.Crim.App.1997), aff'd, 756 So.2d 957 (Ala.), cert. denied, 531 U.S. 830, 121 S.Ct. 82, 148 L.Ed.2d 44 (2000). Thus, no basis for reversal exists as to these claims.”
24 So.3d 480, 536 (Ala.Crim.App.2006).
Based on the foregoing, White’s argument that Alabama’s judicial-override provision violated his right to equal protection is without merit. Therefore, this issue does not entitle White to any relief.
VII.
Pursuant to § 13A-5-53, Ala.Code 1975, this Court is required to address the propriety of White’s conviction and sentences of death. White was indicted for and convicted of one count of murder made capital for intentionally taking the life of Jasmine Parker during the course of a rape, see § 13A-5-40(a)(3), Ala,Code 1975, and one count of murder made capital because the murder was committed during the course of a burglary, see § 13A-5-40(a)(4), Ala. Code 1975.
The record does not demonstrate that White’s sentences of death were imposed as the result of the influence of passion, prejudice, or any other arbitrary factor. See § 13A-5-53(b)(l), Ala.Code 1975.
*243 The circuit court correctly found that the aggravating circumstances outweighed the mitigating circumstances. In its sentencing order, the circuit court found three aggravating circumstances: 1) that White committed the capital offense while he was engaged in the commission of a rape, see § 13A-5-49(4), Ala.Code 1975; "2) that White committed the capital offense while he was engaged in the commission of a burglary, see § 13A-5-49(4), Ala.Code 1975; and 3) that White had previously convicted of another capital offense, see § 13A-5-49(2), Ala.Code 1975. The circuit court then considered each of the statutory mitigating circumstances and found one to be applicable: White’s age at the time of the offense, see § 13A—5—51 (7), Ala.Code 1975. The circuit' court also considered all the nonstatutory-mitigating evidence "White presented, including: 1) that- White suffers from ADHD; 2) that "White suffers from IED; and 3) that the jury recommended a sentence of life in prison without the possibility of parole. The circuit court’s sentencing order shows that it properly weighed the aggravating circumstances and the mitigating circumstances and that it correctly sentenced "White to death. The record supports the circuit court’s findings.
Section 13A-5-53(b)(2), Aaa.Code 1975, requires this Court to reweigh the aggravating and mitigating circumstances in order to determine whether White’s sentences of death are proper. Ater independently weighing the aggravating and mitigating circumstances, this Court holds that "White’s sentences of death are appropriate.
As required by § 13A-5-53(b)(3), Aa.Code 1975, this Court must now determine whether "White’s sentences are excessive or disproportionate when compared to the penalty imposed in similar cases. In this case, "White was convicted of murder made capital because it was committed during a rape. Sentences of death have been imposed for similar crimes in Aabama. See Petric v. State, 157 So.3d 176 (Aa.Crim.App.2013); Calhoun v. State, 932 So.2d 923 (Ala.Crim.App.2005); Scott v. State,- 937 So.2d 1065 (Aa.Crim.App.2005); and Ray v. State, 809 So.2d 875 (Aa.Crim.App.2001), cert. denied, 809 So.2d 891 (Aa.2001), cert. denied, 534 U.S. 1142, 122 S.Ct. 1096, 151 L.Ed.2d 993 (2002). White was also cohvicted of murder made capital because it was committed during a burglaiy." Sentences of death have been imposed for similar crimes in Aabama. See Hosch v. State, 155 So.3d 1048 (Aa.Crim.App.2013); Walker v. State, 932 So.2d 140 (Aa.Crim.App.2004). Therefore, this Court holds that White’s death sentences are neither excessive nor disproportionate.
Lastly, this Court has searched the entire record for any error that may have adversely affected White’s substantial rights and have found none. See Rule 45A, Aa. R.App. P.
Accordingly, White’á convictions and sentences of death are affirmed.
AFFIRMED. "
WELCH, BURKE, and JOINER, JJ., concur.
KELLUM, J., concurs in the result.

. This Court, of course, has conducted a plain-error review of the circuit court’s order, See Rule 45A, Ala. R.Crim, P,

. As this Court noted in our opinion before remand, White had been previously convicted of murder made capital for killing Sierra Black during the course of a rape.

. In his brief, White asserts that his sentence resulting from his capital-murder conviction ■ for Black’s death was outside the knowledge of the jury. This statement is, however, refuted by the record. State’s Exhibit 70, admitted without objection during the sentencing phase, was the case-action summary for White’s capital-murder conviction in which Black was the victim. That exhibit contains the notation that on March 24, 2008, White was "sentenced to life in the penitentiary without parole.” (C. 479.)

 Note from the reporter of decisions: On September 5, 2014, the Court of Criminal Appeals withdrew the March 14, 2014, opinion in Kelley and substituted another one. The new opinion contains the same discussion. See Kelley v. State, [Ms. CR.-40-0642, Sept. 5, 2014] — So.3d —— (Ala.Crim.App.2014).

. The "serious psychological disease” to which White refers is IED.